Argued and submitted December 2, 1994, reversed and remanded January 4, 1995

Daniel REEVES,
*Petitioner,*

*v.*

YAMHILL COUNTY,
Philip Lisac and Norma Lisac,
*Respondents.*

(LUBA 94-105; CA A86197)

888 P2d 79

William C. Cox argued the cause and filed the brief for petitioner.

Richard H. Allan argued the cause for respondents Philip Lisac and Norma Lisac. With him on the brief was Ball, Janik & Novack.

No appearance for respondent Yamhill County.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner appealed to LUBA from Yamhill County's approval of respondent Lisacs' (respondents) application to build a non-resource dwelling in a low density residential zone, which is subject to a Willamette River Greenway (WRG) overlay district. LUBA remanded the decision, but rejected petitioner's contention that the county wrongly interpreted section 902.06.E. of its zoning ordinance (YCZO) as being consistent with granting a permit for the dwelling. Petitioner seeks review, and assigns error to that ruling by LUBA. We reverse.

Section 902.06.E. provides that an applicant for a Greenway permit must demonstrate, *inter alia*:

"That lands exhibiting Class I-IV soils for agricultural production shall be preserved and maintained for farm use."

Respondents' property consists of Class II and III soils. However, as quoted by LUBA, the county made the following interpretive finding:

"A Goal 3 exception was previously taken for the area in which the property is located which allowed the area to be zoned [residential]. [YCZO 902.06.E] is *not applicable* because, as a result of the exception taken to agricultural Goal 3, the property is available for residential use and is not required to be preserved and maintained for agricultural use. * * *" (Emphasis LUBA's; footnote omitted.)

LUBA concluded, in rejecting petitioner's argument concerning section 902.06.E.:

"YCZO appears to require that all Class I-IV soils in the WRG zone be preserved for farm use. On the other hand, the county comprehensive plan includes a committed exception to Goal 3 for the subject property. *Although we are not cited to the specific location or text of that exception, any committed exception to Goal 3 must be based on a conclusion that it is impracticable to put the subject property to farm use. ORS 197.732(1)(b); Goal 2, Part II(b).* Thus, with regard to land in the WRG zone for which the county has taken an exception to Goal 3, the plan and YCZO conflict, to the extent the former says it is impracticable to put such land to farm use whereas the latter says Class I-IV soils on such land are to be preserved for farm use. Where such a conflict exists, we cannot say the county is 'clearly wrong' in adhering to its plan and

interpreting YCZO 902.06.E as inapplicable to land for which an exception to Goal 3 has been taken." (Emphasis supplied; footnotes omitted.)

■■ Petitioner makes several arguments,[1] but the decisive one is:

"There is no evidence in the record to support the * * * conclusion [emphasized in the foregoing quotation]. In fact there is no indication in the County's findings which kind of exception, whether it be a committed, physically developed or other was used as the basis to support the exception area in question. Furthermore, even if the 'committed' exception was used LUBA has failed to recognize the varied bas[e]s upon which a 'committed' exception may be justified. It is the memory of petitioner's attorney that the issue was not raised or argued before LUBA. Also, such a conclusion fails to take into consideration the Oregon Administrative Rules establishing the standards upon which a 'committed' exception can be based. By not taking the next analysis step necessary

---

[1] Petitioner does not argue that LUBA based its consideration of the county's interpretation on an incomplete portion of the county's finding. However, the county's findings continued, after the part quoted by LUBA:

"This finding is based on a reasonable interpretation of the code. The Board's construction of this provision is based on a finding that this provision is subject to at least two interpretations, namely:

"(a) A strict construction of Section 902.06(e) would require that if there are class I-IV soils, then the county may allow only development which is one of those listed as a 'farm use' in ORS 215.203.

"(b) A liberal construction of Section 902.06(e) would allow residential development where the land is the subject of an exception from agricultural Goal 3 and is zoned for very low density residential use."

The county then proceeded to arrive at the "liberal construction" by reading section 902.06.E. in conjunction with other provisions of the zoning ordinance, and not in the light of the conflict between the plan and the ordinance provision that LUBA perceived.

The difference is significant. Section 902.06.E. is unambiguous. Its meaning is not affected by the other ordinance provisions on which the county relies and, standing alone, it can only mean the opposite of what the county has interpreted it to mean. However, under LUBA's understanding that the ordinance requirement is in conflict with the exception in the plan, the inconsistent ordinance provision would indeed be inapplicable, because the plan prevails. *Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975).

Although LUBA's reasoning may be correct, it was not at liberty to substitute its interpretation for that of the county governing body. *Weeks v. City of Tillamook*, 117 Or App 449, 844 P2d 914 (1992). However, we may not reverse or remand on a ground not raised by a party, and all of petitioner's arguments assume that LUBA's understanding of the county's interpretation is accurate. *See Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992). In the balance of this opinion, we will share that assumption.

after first raising the 'committed' conflict and addressing the OAR rules LUBA has missed the fact that in taking a 'committed' exception for the area containing the subject parcel (if that is in fact what Yamhill County based its exception upon) Yamhill County was not required to prove that every existing use within the exception area was committed to non-farm use. It is not inconsistent to preserve class I-IV soils within [this] zone for farm use by application of the WRG Overlay District even though the area as a whole is generally considered 'committed' to non-EFU uses. This is clearly brought out by OAR 660-04-028(3) which states:

> " 'Whether uses or activities allowed by an applicable goal are impracticable as that term is used in ORS 197.732(1)(b), in Goal 2, Part II (b), and in this rule shall be determined through consideration of factors set forth in this rule. Compliance with this rule shall constitute compliance with the requirements of Goal 2, Part II. It is the purpose of this rule to permit irrevocably committed exceptions where justified so as to provide flexibility in the application of broad resource-protection goals. *It shall not be required that local governments demonstrate that every use allowed by the applicable goal is "impossible."* Emphasis Added'

"If a local government is not required to demonstrate that every use allowed by Goal 3, such as farm use on class I-IV soil, is impossible, then the conclusion that protection of such soil class by the Willamette River Greenway Overlay District is inconsistent or in conflict with the committed exception is unfounded."

Respondents answer that their attorney testified at the county hearing about the Goal 3 exception and related matters and, therefore, there was evidence to support the county's findings and to permit LUBA's conclusion. We disagree that the attorney's testimony suffices for those purposes. The relevant question here is not the bare fact of whether an exception was taken but, *inter alia*, what kind of exception was taken, what territory it affects and what uses it allows. The attorney's testimony does not cover all of those matters, and the "evidence" that can make it possible for all relevant facts to be known must include the text of the exception itself.

More importantly, the issue that this case purports to be about is one of interpretation, *i.e.*, what does section

902.06.E. of the zoning ordinance mean when read in the light of the exception in the comprehensive plan. Even under *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and ORS 197.829, an interpretation can be affirmable only if it is based on something that is capable of being interpreted. The language of the exception is indispensable to the interpretive exercise. We agree with petitioner that the record is inadequate to permit the conclusion that LUBA reached or, for that matter, any other conclusion on the issue.[2]

Respondents argue that, even if we cannot affirm on the basis of the county's interpretation discussed above, we should affirm on the basis of the following alternative finding in the county's order:

"8.4   Even if Section 902.06(e) were considered to be applicable, the proposal nevertheless satisfies that criteria because the Board would interpret this requirement that 'lands exhibiting Class I-IV soils for agricultural production shall be preserved and maintained for farm use' as applying only to the undeveloped portion of the property, i.e., that part of the property which is not occupied by the 'development'. Thus, under this construction, the application satisfies Section 902.06(e) because the property which is to be left in its natural state according to the site plan will be preserved for farm use."

Respondents note that petitioner did not assign error to that finding in its presentation to LUBA. However, LUBA noted the existence of the finding, but declined to address its merits because it had decided the section 902.06.E. issue on other grounds. Under these circumstances, we reject respondents' invitation to make finding 8.4 the ground for affirming LUBA's decision. We do not believe that there is a fatal preservation problem here. Petitioner clearly raised the *issue*

---

[2] We do not reach the legal contentions that petitioner bases on the problem with the record, except to note that respondents do not persuade us that the error is harmless. The legal consequences must be considered initially by LUBA or the county on remand, taking into account any further development of the record that may occur. *See* n 3, *infra.*

We note, however, that we agree with petitioner's suggestion that the nature and effect of the exception may not be purely a matter of a local interpretation of local legislation. Although the exception is a part of the county's comprehensive plan, the definitions of, standards for and effects of goal exceptions are extensively regulated by state law. *See Forster v. Polk County*, 115 Or App 475, 839 P2d 241 (1992); *cf.* ORS 197.829(4).

of the correctness of the county's interpretation, although it did not argue specifically about the alternative basis for the interpretation in finding 8.4. *See State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). The fact that the alternative is included in what is denominated a separate finding does not change the analysis. The county's interpretation of the provision is a legal exercise, and it is immaterial that it is contained in what the county calls factual findings or that the county has chosen to use several findings to communicate its interpretation.

■       Nevertheless, preservation aside, there remains a possible basis for affirming. The principle that we may affirm a lower tribunal on grounds other than the ones that comprised the bases for its decision is sometimes called — sometimes anomalously — the "right-for-the-wrong-reasons" doctrine. However, as its name suggests, that doctrine does not come into play unless the proffered alternative reasons for affirmance *are* "right." In connection with the review of a local interpretation of local legislation after *Clark*, "right" means that the governing body's interpretation is not "clearly wrong." *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992). As we understand the county's alternative finding, however, it does not pass that test. The interpretation contained in the finding is that the farm use preservation requirement of section 902.06.E. applies only to the part of a parcel which the applicant does not seek to develop in a way that prevents preservation. In other words, no application for a non-farm use of property *could* contravene the section, because the preservation requirement extends only to the part of the applicant's property which the applicant does not propose to put to non-farm use or to develop in a way that prevents preservation. Under the finding, all that section 902.06.E. requires is that farm uses be preserved to the extent that property owners choose to preserve them. The interpretation goes well beyond being clearly wrong. A remand to LUBA is necessary for further proceedings concerning section 902.06.E.[3]

Petitioner makes other arguments in which he challenges the substance of the county's interpretation of section

---

[3] Should LUBA consider the appropriate course to be a direct remand to the county on the issue, it may follow that course.

902.06.E. Because we have no basis for concluding that the interpretation will be unchanged after the exception is identified and considered, we do not reach those arguments.

Reversed and remanded.