Submitted on record and briefs May 21, affirmed June 25, 1997

Dolores NICHOLSON
and Martha Lynn Gray,
*Respondents,*

*v.*

CLATSOP COUNTY,
*Respondent,*

*and*

Richard T. SCHROEDER,
*Petitioner.*

Gene KEEVER,
Norma Keever, Leroy Groshong,
Bonnie Groshong and Martha Lynn Gray,
*Respondents,*

*v.*

CLATSOP COUNTY,
*Respondent,*

*and*

Richard T. SCHROEDER,
*Petitioner.*

(LUBA Nos. 96-033, 96-035; CA A96517)

941 P2d 566

Michael C. Robinson, Steven L. Pfeiffer and Stoel Rives LLP filed the brief for petitioner.

Respondent Dolores Nicholson filed the brief *pro se*.

Respondent Martha Lynn Gray filed the brief *pro se*.

Gregory S. Hathaway, Timothy R. Volpert, Christopher C. Brand and Davis Wright Tremaine filed the brief for respondents Gene Keever, Norma Keever, Leroy Groshong, and Bonnie Groshong.

No appearance for respondent Clatsop County.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Petitioner Schroeder seeks review of LUBA's remand of Clatsop County's decision granting petitioner's application for approval of a subdivision. We affirm.

The proposed location of the development is in an active dune overlay zone. The area is generally subject to Goal 18, the statewide planning goal relating to "coastal beach and dune areas." In 1978, the county adopted comprehensive plan provisions that limited or prohibited development west of the active dune line. That year, the county also adopted Ordinance 78-25, through which it took an exception to Goal 18, based on existing residential development and commitment west of the line in the general vicinity of petitioner's proposed subdivision. The plan provision and Ordinance 78-25, along with more recent county enactments and at least one private restriction, could arguably bear on the permissible location of the construction setback line for the proposed development. The most recent of the enactments is Ordinance 92-20. As explained by LUBA:

> "The parties agree that Ordinance 92-20 establishes the applicable active dune line/construction setback line for [the proposed subdivision], but disagree where that line is located."

The county planning commission approved petitioner's application. Respondents Keever and Groshong (respondents)[1] appealed to the county governing body (board), contending that the planning commission erred in where it permitted the construction setback line to be located. The board allowed an on-the-record (as distinct from an evidentiary) review hearing. The notice of hearing stated that "Ordinance 92-20 and all other adopted County Ordinances are considered to be part of the record."

During the course of the hearing, the county staff called the board's attention to Ordinance 83-17, as a possible

---

[1] Two other respondents have appeared here. Our discussion in this opinion will not require separate reference to the other two.

It is also unnecessary to our discussion of the issues that we will address to describe the proposed locations of the setback line or the contentions that the parties made before the county or on appeal concerning the location.

interpretive guide to the meaning of Ordinance 92-20, which would support petitioner's, rather than respondents', position concerning the permissible location of the line. No previous reference had been made to Ordinance 83-17 either in the staff's reports or anywhere else in the record of the board hearing or the earlier county proceedings.

The reference to Ordinance 83-17 at the board hearing led to the following exchange:

"[Respondents' counsel]:

"What I'm concerned about, Mr. Chairman, is that [the staff member] just a second ago said he disagreed with everything I had said with regard to where the line was supposed to be and what I have asked the board to do tonight in terms of making a line and then he is now producing this document referring to information that we have not seen before and referring to an ordinance that was never referred to in the staff report presumably in response to a question that also perhaps in [*sic*] rebuttal to my presentation, and I am very concerned that I haven't seen it before, we haven't heard about this before and I think that puts my clients and me in a very, very significantly bad light.

"[Petitioner's counsel]:

"Mr. Chairman, for the record, we have no objection to letting [respondents' counsel] rebut whatever he wants to.

"[Respondents' counsel]:

"That's a very kind offer, but I think there is a lot more that goes into that such as having an ample opportunity for review of this new material and perhaps a new position taken by staff rather than having to adequately respond to it right now.

"[County counsel]:

"Mr. Chairman, I think I would take the position that this not be in the record and ought not be referred to and ought not be considered by the Commission.

"[Board chair]:

"Our question is where the line ought to be located and I think we're trying to determine that fact.

"[County counsel]:

"And I think it is appropriate that staff advise you of its position and its response to that testimony without the use of documentary evidence not in the record."

Nothing more was said about Ordinance 83-17 at the hearing. The next mention of it appeared in the board's findings and order, prepared after the hearing was closed. That order relied largely, if not primarily, on Ordinance 83-17 in reaching a conclusion that was generally favorable to petitioner's position regarding the proper location of the construction setback line.

Respondents appealed to LUBA, challenging the substance of and the procedures followed in connection with the county's decisions concerning the setback line. In a thorough and carefully-reasoned opinion, LUBA first observed that Ordinance 83-17, the principal support that the county and petitioner offered for the decision, was not part of the county record that was before LUBA and had not been presented to LUBA in any other way that sufficed to familiarize LUBA with its contents.[2] LUBA also noted that petitioner's

---

[2] LUBA amplified in a footnote:

"The record transmitted by the county does not appear to include any portion of Ordinance 83-17. Both petitioner Nicholson and [petitioner] append identical portions of Ordinance 83-17 to their respective briefs. The material submitted includes a 'cover ordinance,' with recitals including the short title '1983 LCDC In Order to Comply Statement.' The cover ordinance adopts ordinance text and maps as an 'Exhibit A,' incorporating them by reference. Immediately following the cover ordinance is an 'Index of Exhibit A,' which lists the planning documents that are adopted and amended. Most of the submitted material consists of changes to the Goal 2 exceptions document background reports, but there are also textual changes to various area plans and other planning documents that comprise the comprehensive plan. The material submitted to us appears to stop part way through the Goal 2 exceptions analysis, and does not appear to include any Goal 18 analysis. The only references to the Surf Pines property exceptions we were able to locate in our search of the 300-plus pages submitted to us concerned Goal 17. The index lists amendments to the Goal 18 Background Report and County wide Element, but these were apparently not included in the portion of the ordinance submitted to us. In particular, there is no statement that Ordinance 83-17 establishes a new 'construction setback line' for the Surf Pines area or that that line is either more restrictive (further east) or less restrictive (further west) than the Goal 18 exception line established by Ordinance 78-25. Perhaps more important for the county's findings, no party has proffered any map adopted by Ordinance 83-17 that could arguably be the basis for locating the 'Surf Pines Building Line (Goal 18 Exception)' identified in Ordinance 92-20 at a point 200 feet west of the

argument to it "fails to identify where in the ordinance there is any language or map that supports the findings." Consequently, LUBA agreed with respondents that "there is not substantial evidence in the record to support the location of the * * * construction setback line" described in and permitted by the county's findings.

LUBA also agreed with respondents that the county had not given them adequate notice of the applicability of Ordinance 83-17 or an adequate opportunity to be heard regarding that ordinance at the board hearing. *See* ORS 197.763(3)(b).[3] LUBA therefore remanded the county's decision on the basis of that error, as well as the one previously discussed.

However, LUBA rejected respondents' argument that the county's decision was reversible for the further reason that Ordinance 92-20 could *only* be interpreted as requiring the setback line to be located where they urged and that the county's contrary interpretation was "clearly wrong" and therefore could not be sustained under ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). The effect of LUBA's ruling on that argument, along with its other rulings, was to direct the county to reconsider its interpretation on remand, without *necessarily* limiting it to the interpretation advanced by respondents. LUBA further noted, in summarizing its disposition:

> "On remand, the county may adopt findings based on Ordinance 83-17, but only if the ordinance supports such findings, and only if the pertinent portions of that ordinance are available for our review in the event of a subsequent appeal."

---

Ocean Avenue right-of-way. Again, such a map may exist as an enactment that could be judicially noticed, but we have not seen it."

LUBA's footnote concerns its rejection of petitioner's argument that judicial or administrative notice should be taken of the parts of the ordinance that the record and the party's presentations failed to provide. *See* OEC 201(c), (d). The footnote also demonstrates that Ordinance 83-17 is not a concise document that can be readily noticed and applied, but consists of numerous component parts even in the fragmented form that the parties purported to furnish LUBA in their briefs.

[3] ORS 197.763(3)(b) requires a notice of hearing to

"[l]ist the applicable criteria from the ordinance and the plan that apply to the application at issue."

In the interest of providing an overview of what the controversy is about, we have included more detail in the preceding discussion than is directly relevant to the issues that are presented now. However, the two grounds for LUBA's remand, which in turn give rise to the principal issues before us, can be succinctly summarized: (1) the county based its decision on an ordinance that is not in the record and that was mentioned only once—and then at a very late point—in the county proceedings; and (2) the opponents of the application were given no meaningful notice of or ability to address that ordinance or its potential effect on the county's decision. In his arguments to us, petitioner assigns error to both of LUBA's conclusions.[4]

Petitioner first contends that LUBA erred in treating Ordinance 83-17 as "evidence," and in holding that its absence from the record gave rise to a lack of "substantial evidence." Petitioner maintains that, rather than a substantial evidence question, the issue to which LUBA should have directed and confined its attention was whether the board's interpretation of the local legislation relating to the setback line—including Ordinance 83-17—was reversible under the deferential review standard of ORS 197.829(1) and *Clark*.

We addressed a similar contention in *Reeves v. Yamhill County*, 132 Or App 263, 888 P2d 79 (1995). There, the county had permitted a residence at a location where non-agricultural development was prohibited by a zoning ordinance provision. The county had concluded that that prohibition was inapplicable to the location in question, because it was part of an area for which the county had previously enacted an exception to Goal 3, the statewide agricultural planning goal. However, the text of the exception enactment was not considered by or, apparently, physically present before the county decisionmaker and, *ipso facto*, it was also not before LUBA. We disagreed with LUBA's affirmance of the county's conclusion, and explained:

---

[4] Petitioner has combined his two assignments of error for argument, and we will address his arguments consistently with the way they are presented. We nevertheless emphasize that the two grounds for LUBA's remand are separate, and the appropriate disposition here is to affirm LUBA's decision unless *both* of its conclusions are erroneous.

"The relevant question here is not the bare fact of whether an exception was taken but, *inter alia*, what kind of exception was taken, what territory it affects and what uses it allows. * * * [T]he 'evidence' that can make it possible for all relevant facts to be known must include the text of the exception itself.

"More importantly, the issue that this case purports to be about is one of interpretation, *i.e.*, what does section 902.06.E. of the zoning ordinance mean when read in the light of the exception in the comprehensive plan. Even under *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and ORS 197.829, an interpretation can be affirmable only if it is based on something that is capable of being interpreted. The language of the exception is indispensable to the interpretive exercise. We agree with petitioner that the record is inadequate to permit the conclusion that LUBA reached or, for that matter, any other conclusion on the issue." 132 Or App at 267-68. (Footnote omitted.)

Similarly, here, petitioner disregards the seemingly self-evident fact that, before an enactment can be interpreted or the interpretation can be reviewed, deferentially or otherwise, the enactment must be present and perceptible to both the interpreting body and the reviewing body. One cannot interpret or review something that is not there. Whether or not we would have chosen the term "substantial evidence" to reflect that conclusion, as respondents and LUBA did, the substance of the conclusion is a truism and it is beyond reasonable challenge.

Petitioner appears next to argue that the county's interpretation of the appropriate location of the setback line under its legislation is affirmable despite the absence of Ordinance 83-17 from the record. In that connection, petitioner moves that *we* "take official notice of a portion of the Clatsop County zoning ordinance map," which was enacted as part of Ordinance 83-17 and which is set forth in an appendix to petitioner's brief in this court. There are a number of reasons why this argument does not succeed. *See, e.g.*, note 2. The basic one, however, is that this court, like LUBA, *reviews* land use decisions; we do not *make* them initially.[5] The county's decision concerning the location of the line turns extensively on the board's interpretation of Ordinance 83-17. We

---

[5] Because the problem here is, in large part, the adequacy of the record rather than the adequacy of the board's interpretations of legislation *per se*, we do not

have no knowledge or basis for knowledge about what that ordinance says or does in its entirety, or what part or parts of it were physically before, considered by, or deemed significant by the county decisionmaker. The part of it that petitioner now asks us to judicially notice, like the parts of it that he directed to LUBA's attention, simply cannot close the glaring gap in the record or provide a basis for us to evaluate the county interpretation that petitioner asks us to affirm.

Petitioner's remaining contentions relate to LUBA's conclusion that respondents were not given adequate notice of or opportunity to be heard concerning Ordinance 83-17. Some of petitioner's specific points in this connection are premised on his characterization that the issue here is one of legislative interpretation rather than one of evidence. That premise is as incorrect in this connection as it was in the one we have already addressed, and it merits no further comment.

Petitioner makes two contentions that appear to be independent—or quasi-independent—of that premise, and that do necessitate brief discussion. First, he asserts that respondents were given an opportunity to comment on Ordinance 83-17 at the board hearing, but "rejected that opportunity" and thereby waived their right to "rebut" the ordinance. We have quoted the colloquy that took place at the board hearing after the reference to Ordinance 83-17 was made. We repeat the following statement of respondents' attorney during the course of that colloquy:

> "That's a very kind offer, but I think there is a lot more that goes into that such as having an ample opportunity for review of this new material and perhaps a new position taken by staff rather than having to adequately respond to it right now."

Neither that statement nor the colloquy as a whole can reasonably be understood as suggesting a rejection on respondents' part of the opportunity to comment on the ordinance, if any consideration was to be given to it by the board; indeed, counsel's comment was clearly aimed at obtaining further and later opportunities to review the ordinance and

---

regard this as a situation in which we should interpret *any* county legislation *ab initio* under ORS 197.829(2).

to comment about it. Moreover, the notion that any kind of waiver inhered in the colloquy becomes more untenable still when considered in light of the fact that, immediately after respondents' counsel spoke, the county counsel admonished the board twice—without disagreement—against the inclusion of Ordinance 83-17 in the record and against any consideration of or reference to it in the proceedings.

Finally, petitioner contends that the county's failure to give specific notice that Ordinance 83-17 was among the pertinent approval criteria "begs the question of whether [respondents] were entitled to rebut [*sic*] that ordinance." At most, petitioner asserts, "the County's failure to adequately apprise [respondents] of the applicable approval criteria allowed them to raise new issues before LUBA."

It is correct that ORS 197.763 has a modified "raise it or waive it" requirement as one of its components and that one of the consequences of a local government's failure to provide sufficient notice under ORS 197.763(3)(b) is that otherwise unpreserved issues may be raised by an affected party in an appeal to LUBA. ORS 197.835(4)(b). It is not correct, however, that the sole concern of ORS 197.763 is with preservation, or that the preservation provisions of the statute are relevant here. More to the point, for the issues in this case, is ORS 197.763(4)(b), which provides as material:

> "Any staff report used at the hearing shall be available at least seven days prior to the hearing. If additional documents or evidence are provided by any party, the local government may allow a continuance or leave the record open to allow the parties a reasonable opportunity to respond."

*See also Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973).

We find that all of petitioner's arguments are wholly without merit.

Respondents cross-assign error to LUBA's rejection of their argument that, as a matter of law under the applicable local provisions, the setback line must be positioned as they urge rather than where it may be located under the county's present decision. We agree with LUBA's reasoning and its conclusion regarding that argument. The substantive

issue that the cross-assignment presents is among those that the county must consider on remand, in the light of *all relevant* local legislation. *See* note 5.

Affirmed.