Argued and submitted July 22, affirmed October 14, 2009

# Mel STEWART,
*Respondent,*

*v.*

# CITY OF SALEM,
*Petitioner.*

## Land Use Board of Appeals
## 2009009; A142161

219 P3d 46

Daniel B. Atchison, Assistant City Attorney, argued the cause for petitioner. With him on the brief was City of Salem.

John Shonkwiler argued the cause for respondent. On the brief was William F. Hoelscher.

Before Edmonds, Presiding Judge, and Landau, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Respondent City of Salem (the city) seeks review of an opinion and order of the Land Use Board of Appeals (LUBA) that reversed the city's denial of petitioner's application for approval of a tentative partition plan. The city contends that LUBA erred in concluding that petitioner adequately preserved his objections to the denial of the partition request. The city also asserts that LUBA erred in reversing, rather than remanding, the city's order denying the partition plan application. Both contentions question the board's interpretation of applicable statutes, requiring us to review LUBA's legal rulings to determine whether they are "unlawful in substance." ORS 197.850(9)(a). We affirm.

We take the facts from the LUBA opinion, *Stewart v. City of Salem*, 58 Or LUBA 605 (2009). Petitioner applied for approval of a partition plan to divide his land into three legal lots. The property is zoned RS (Single-Family Residential) and is about 37,000 square feet in size. The minimum parcel size in the RS zone is 4,000 square feet. As proposed, two of the parcels abutted the street and were approximately 6,700 square feet in area (lots 1 and 2). Petitioner sought approval of a third, interior flag lot that was approximately 21,350 square feet in size and was connected to the street by a 20-foot wide strip of land between the two street lots (lot 3). The size of the interior lot could allow for future partitioning.

The city planning administrator approved the partition application with conditions on November 25, 2008. Petitioner appealed the imposition of the conditions of approval on December 2, 2008. A few days later, the city council initiated its own review of the partition decision under Salem Revised Code (SRC) 114.210. That code provision authorizes the council "by majority vote [to] initiate review of a[n] * * * administrator * * * decision." When the council initiates its own review, it "shall replace filed or possible appeal of the decision below." SRC 114.210(d). A public hearing on the review was scheduled for January 5, 2009.

Petitioner wrote to the city attorney on December 10, 2008, requesting that the city identify the bases of the council's concerns on review so that a response could be prepared.

The city did not respond to petitioner's request. The notice of the public hearing provided:

"This will be a new hearing and will result in a decision that supersedes that rendered by the Planning Administrator. Testimony should be directed toward the applicable criteria of the Salem Revised Code (SRC) Chapter 63 including Sections 63.043, 63.047 and 63.051. Failure to raise an issue in the hearing, in person or by letter, or failure to provide statements or evidence sufficient to afford the decision maker and the parties an opportunity to respond to the issue precludes an appeal to the Land Use Board of Appeals on that issue."

At the January 5, 2009, public hearing, the city staff defended the conditions of approval and recommended modifications to two conditions. Petitioner testified about the conditions of approval. The property is steeply sloped downward, away from the street, and the disputed conditions concerned grading requirements for the access driveway to the interior lot, signage to demarcate the driveway as a fire lane, and required fire suppression sprinklers for any residence constructed on the interior lot. At the end of petitioner's testimony, a city councilor asked petitioner whether he intended to further divide the interior lot in the future. Petitioner responded that he had not decided whether to seek additional partitioning in order to allow construction of a second residence on the interior parcel, but he might do so in the future. A neighbor then testified about geotechnical concerns pertaining to erosion and soil stability as a result of any construction on the property.

The council then questioned the planning administrator about the city's practice when a partition proposes a large lot that could be further divided in the future. The administrator replied:

"The code specifically directs that if a partition would appear to be setting us up for another partition or could be a subdivision in the future, we can require it to be processed as a subdivision and, in fact, we did look at that issue in connection with this proposal. We met with the applicant. I personally suggested to him that it * * * might look like a subdivision and he told me that * * * he had no plans to further divide Lot 3. I reflected upon that but I also inquired of

the staff as to whether or not substantively there would be any change. If we processed it as a subdivision would we require different improvements, a higher level of improvements and so forth, and I was told, no, the improvements required would be the same. And finally, I looked at Lot 3, which is, as you can see, from the aerial, I think going to be very challenging to put even a house there and so I concluded that there was [no] substantive difference and so therefore I didn't require it be processed as a subdivision."

The administrator's code reference was to SRC 63.065, which provides:

"When it appears to the planning administrator, commission, or council that the area of a proposed partition is to be ultimately divided into four or more lots or parcels, the provisions of this chapter pertaining to subdivisions shall apply."

Later in the hearing, the administrator confirmed that the city's process for approving subdivisions and partitions was the same, except for a required neighborhood meeting on any proposed subdivision.

Petitioner testified in rebuttal on the geotechnical concerns raised in the opponent's presentation. The council then adopted a motion to tentatively deny the partition "on the basis that this is essentially a subdivision and that the person has not—the applicant has not followed our subdivision ordinance." The denial order, adopted on January 12, 2009, made a number of factual findings, and then provided:

"(f) Pursuant to SRC 63.065, the City Council finds that based on the testimony of the applicant, and a review of the proposed layout of the three lots, this partition application should have been processed as a subdivision, in compliance with the City's subdivision regulations."

The decision ultimately ordered:

"The Planning Administrator's decision approving Partition Case No. 08-22 is hereby rescinded, and the application denied. The Applicant may submit an application for

a subdivision of the subject property, as provided by SRC 63.065."

On appeal before LUBA, among other assignments of error, petitioner contended that the city lacked authority to deny the partition application on the basis of SRC 63.065 and that the city took that action only because the statutory deadline for taking action was imminent.[1] The city responded that petitioner had not objected to the council discussion of SRC 63.065 with staff and, therefore, could not assign error to the city's reliance on that code provision as a basis for denial of the application. LUBA held that petitioner could seek review of the city's application of SRC 63.065 and that the city lacked authority to deny the partition under that code provision. The board concluded that reversal of the tentative partition plan denial was required because "the local government decision is outside the range of discretion allowed the local government under its comprehensive plan and implementing ordinances" under ORS 197.835(10)(a)(A). The city seeks review of those determinations.

The issues in this case concern the manner in which a partition decision is made and the required justification for that decision. We pause to describe the policies that regulate that process and its outcome. The process for partitioning property is prescribed by ORS 92.010 to 92.190. To "partition land" means "to divide land to create not more than three parcels of land within a calendar year." ORS 92.010(8). By contrast, to "subdivide land" means "to divide land to create four or more lots within a calendar year." ORS 92.010(16). Under ORS 92.040(1), before a partition plat can be recorded, a "tentative plan showing the general design" of the partition must be approved. The approved tentative partition plan binds a city in a later, technical review and approval of the recording of a partition plat. *Id.* The city's subdivision code replicates those requirements. SRC 63.010 - 63.060.

___

[1] ORS 92.105 subjects a city council to the decision-making deadline imposed by ORS 227.178 "in taking final action on an application for approval of a tentative plan for a * * * partition located within an acknowledged urban growth boundary." Generally speaking, ORS 227.178(1) requires a city to take final action on an application for a limited land use decision, including a tentative partition plan decision, "within 120 days after the application is deemed complete." The processing deadline for petitioner's application was January 28, 2009.

ORS 92.046(1) authorizes cities to "adopt regulations or ordinances governing approval * * * of proposed partitions." That statute continues:

> "Such ordinances or regulations may specify the classification of such partitions which require approval under this section and may establish standards and procedures governing the approval of tentative plans for such partitions. The standards may include all, or less than all, of the same requirements as are provided or authorized for subdivisions under ORS 92.010 to 92.190 and may provide for different standards and procedures for different classifications of such partitions so long as the standards are no more stringent than are imposed by the city or county in connection with subdivisions."

ORS 92.046(5) requires a tentative partition plan to comply with "the ordinances or regulations adopted under this section that are then in effect for the city or county within which the land described in the tentative plan is situated." SRC 63.047(b) similarly requires that the planning administrator's approval of a tentative partition plan be based on factors that include "all applicable provisions of this Code." SRC 63.051(a) provides that one of the purposes of tentative partition plan review is to insure that the "proposal conforms to the requirements of this chapter." SRC 63.051(b) provides, in part, that "[l]ack of compliance with the standards set forth in subsection (a) of this section shall be grounds for denial of tentative plan approval."

ORS 92.046(3)(a) permits the governing body of a city to delegate by ordinance "any of its lawful functions with respect to partitions" to a planning commission or an appointed city official. Should a city governing body do so, the ordinance "may also provide for appeal to the governing body from such approval or disapproval." ORS 92.046(3)(b). Approval of a tentative partition plan is a "limited land use decision." ORS 197.015(12)(a)(A) (defining "limited land use decision" as including "approval or denial of a tentative * * * partition plan, as described in ORS 92.040(1)"). A limited land use decision can be approved through a notice and comment administrative process, with an appeal hearing based on the administrative record or a new record. ORS

197.195(5). However, any appeal hearing creating a new record is subject to the quasi-judicial hearing procedures set out at ORS 197.763. *Id.*

The relevant city subdivision code provisions are consistent with those statutory requirements. The city's subdivision code delegates authority to the planning administrator to make the initial land division decision, SRC 63.047, with the right of the applicant or interested parties to appeal that decision to the planning commission, SRC 63.335. The council can initiate its own review of the administrator's decision on its own motion. SRC 63.337; SRC 114.210. As noted above, the council's review supersedes other filed appeals, and the matter is decided anew. SRC 114.210(d).[2]

ORS 197.195(4) requires a written justification of a decision on a limited land use decision, including one on a tentative partition plan:

"Approval or denial of a limited land use decision shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

The city's first assignment of error is that LUBA erred in holding that petitioner preserved his claim about the city's misapplication of SRC 63.065 in its decision. State statutes impose preservation of error requirements in local government land use proceedings. As just noted, the *de novo* hearing before the council on the tentative partition plan was subject to the requirements for "the conduct of quasi-judicial land use hearings" set out in ORS 197.763. *See* ORS 197.195(5). ORS 197.763(1) provides:

"An issue which may be the basis for an appeal to the Land Use Board of Appeals shall be raised not later than

---

[2] SRC 114.200(e) further provides:

"Where the appeal is to be heard de novo, the provisions of SRC 114.100 to 114.170 [conduct of evidentiary hearings] shall be fully applicable to the council's hearing, and the matter shall proceed as though the decision appealed from was a recommendation to council only. The decision appealed from shall be considered advisory and shall not operate to relieve or shift any burden of proof applicable in the proceeding from which appeal is taken."

the close of the record at or following the final evidentiary hearing on the proposal before the local government. Such issues shall be raised and accompanied by statements or evidence sufficient to afford the governing body, planning commission, hearings body or hearings officer, and the parties an adequate opportunity to respond to each issue."

This so-called "raise it or waive it" requirement is echoed in the statutes describing LUBA's review of a local land use decision. ORS 197.835 provides, in part:

"(3) Issues shall be limited to those raised by any participant before the local hearings body as provided by ORS 197.195 or 197.763, whichever is applicable.

"(4) A petitioner may raise new issues to the board if:

"(a) The local government failed to list the applicable criteria for a decision under ORS 197.195(3)(c) or 197.763(3)(b), in which case a petitioner may raise new issues based upon applicable criteria that were omitted from the notice. However, the board may refuse to allow new issues to be raised if it finds that the issue could have been raised before the local government; or

"(b) The local government made a land use decision or limited land use decision which is different from the proposal described in the notice to such a degree that the notice of the proposed action did not reasonably describe the local government's final action."

Applying those statutes, LUBA rejected the city's claim that petitioner waived all challenges to the application of SRC 63.065 in the partition decision by failing to object to the council's potential application of that code provision. Relying on ORS 197.835(4), LUBA reasoned:

"ORS 197.835(4) provides that a petitioner may raise new issues relating to applicable criteria that were omitted from the notice required by ORS 197.195 or 197.763, unless LUBA finds that the issue could have been raised before the local government. Neither of the notices the city sent out mentioned SRC 63.065 at all, and clearly did not list SRC 63.065 as an applicable approval criterion or basis to approve or deny the partition application. Nor do we agree that the issue could have been raised during the city council hearing. The city did not respond to petitioner's written request to be informed of the basis for the city council's

review and the issues to be addressed. As far as the record reflects, it was only late in the city council hearing, after petitioner testified, that SRC 63.065 was first mentioned, or any concern was raised regarding future division of Parcel 3. While the city council gave petitioner three minutes for rebuttal before closing the hearing and entering deliberations, it is difficult to fault petitioner for failing to recognize that the city council might deny the partition application under SRC 63.065, or for failing to advance legal challenges to denial under SRC 63.065 during rebuttal. Under these circumstances, we do not think petitioner had reasonable notice that the city might apply SRC [63.065] to deny the application, or that petitioner had a reasonable opportunity to raise issues regarding application of SRC 63.065."

*Stewart*, 58 Or LUBA at 611-12 (footnote and record citations omitted).

      The city advances two arguments to support its contention that LUBA erred in applying ORS 197.835(4) to excuse petitioner from advocating the inapplicability of SRC 63.065 as an approval criterion in order to preserve that claim before LUBA. First, the city argues that it did not apply SRC 63.065 in the denial decision, so there was no need to identify the code provision as an applicable criterion in the hearing notice. The city asserts that the partition order, after entering findings on SRC 63.065, merely ordered that the application be denied, implicitly on the basis of the partition approval criterion in SRC 63.047(b)(3) that the proposal comply "with all applicable provisions of this Code." The city maintains that "SRC 63.047(b)(3) is an approval criterion, whereas, SRC 63.0[65] is only a procedural requirement." The city acknowledges the hearing notice, which did provide that "[t]estimony should be directed toward the applicable criteria of the Salem Revised Code (SRC) Chapter 63, including Sections 63.043, 63.047 and 63.051." If we understand the city's argument correctly, it is that petitioner was not excused from identifying the issue of the inapplicability of SRC 63.065 under ORS 197.835(4) because the city referenced as relevant "the applicable criteria of the Salem Revised Code" in the hearing notice, even if it did not cite the provision in that notice under ORS 197.835(4).

The city next argues that LUBA erred in concluding that petitioner could not have raised the inapplicability of SRC 63.065 and that the board should have "refuse[d] to allow new issues to be raised" because "the issue could have been raised before the local government" under ORS 197.835(4)(a). The city contends that the planning administrator's reference to an unidentified code provision under which "we can require it to be processed as a subdivision," and the council's discussion of that outcome before petitioner's rebuttal, obligated petitioner to object during rebuttal to the legal relevancy of SRC 63.065.

In applying ORS 197.835(4) to petitioner's contentions on review, LUBA concluded that the application of SRC 63.065 to the partition plan application was a "new issue," but that the "new issue" nevertheless could be raised by petitioner before LUBA for two reasons: (1) because SRC 63.065 was applied by the council but not listed as an applicable decisional criterion in the hearing notice; and (2) because that issue could not "have been raised before the local government" under ORS 197.835(4)(a). The city asserts that both determinations are "unlawful in substance" and should be overturned under ORS 197.850(9)(a).

■ Our review of LUBA's decision on whether the SRC 63.065 issue "could have been raised" before the council under ORS 197.835(4)(a) necessarily requires us to assess whether that issue was or was not raised before the city council. As explained below, we conclude that the issue of the application of SRC 63.065 to the partition plan application was raised by a participant before the council. Consequently, we decide that LUBA erred in applying ORS 197.835(4) to allow its review of that issue because the application of SRC 63.065 to petitioner's request was not a "new issue" before LUBA. That conclusion, nonetheless, requires us to affirm LUBA's conclusion that the SRC 63.065 issue was properly before it in light of ORS 197.835(3). That part of the statute allows LUBA review of an issue "raised by [a] participant before the local hearings body."[3]

---

[3] The board's incorrect legal conclusion about the applicability of ORS 197.835(4) to the issue on review does not require reversal of its opinion and order as a matter of course. As we noted in *Gisler v. Deschutes County*, 149 Or App 528, 533, 945 P2d 1051 (1997),

The city council heard contentions from three different sources during the public hearing concerning the relevance and scope of SRC 63.065: members of the city council, who explicitly discussed facts relevant to the application of the code provision and its potential application to petitioner's request; members of the city staff, who described the code provision and the decision of the city administrator not to apply SRC 63.065 to the request; and petitioner, who responded to that council discussion as well as asserted, through his application and his supporting testimony, that the application complied with all relevant standards of approval.

A member of the city council, Councilor Cannon, questioned petitioner and staff concerning whether SRC 63.065 and subdivision policies applied to petitioner's application. Petitioner explicitly responded to those inquiries. At the end of petitioner's opening testimony, the councilor inquired, "Is it your intent to add a second dwelling to Lot 3 at some point in the future?" Petitioner responded, "I haven't made that decision at this point in time." Shortly afterwards the councilor inquired, "So, this could be a subdivision then?" And petitioner answered, "[N]ot with the existing, as it stands right now, your code provisions are very specific on what a subdivision is and, no, it's not a subdivision at this point in time. It doesn't meet the code provisions for being a subdivision." The councilor pressed on and asked petitioner whether adding a second dwelling to Lot 3 was "something that you might consider in the future?" Petitioner responded in the affirmative. Cannon then asked, "[I]f you were to put in a second dwelling then this would be a way to avoid this subdivision requirement of our code would it not?" Petitioner then asked whether there was a difference between the subdivision and partition approval standards and introduced evidence of the approval of a nearby partition where "it

"insofar as petitioner suggests that this incorrect statement by LUBA in its opinion can warrant reversal in itself, we disagree. The dispositive issues that are presented to us are matters of law, and we may resolve those issues on review. Whether or not LUBA's reasoning was correct in all of its particulars is not decisive. *See Holland v. City of Cannon Beach*, 323 Or 148, 915 P2d 407 (1996); *Reusser v. Washington County*, 122 Or App 33, 857 P2d 183, *rev den* 318 Or 60 (1993)."

(Footnote omitted.)

appears that you approved the same exact thing. So, I think this is probably pretty normal."

Following the initial testimony of staff, petitioner, and the objecting neighbor, and before the close of the public hearing, the council discussed potential outcomes with city officials.[4] Councilor Nanke asked, "In regards to the subdivision issue, and what our typical practice is, if something is conceivably able to be put into four parcels, is this our standard practice to allow the partition or to require them to abide by the subdivision request?" The planning administrator responded as noted above, describing SRC 63.065 and the lack of any difference between the application of the subdivision or the partition approval standards to the application as well as the similarities between the approval processes for both types of land divisions, and concluding that "therefore I didn't require it be processed as a subdivision." Still later, Councilor Rogers raised the same issue, noting:

> "Okay. There's elements of this partition that hits my neighborhood pretty hard and it's the no parking signs and it's the flag lots and it's whether you have a subdivision design or you don't and all of these are in this project and * * * I'm totally frustrated when we * * * had this discussion * * * just recently where we had a development of three lots and now * * * the fourth one comes in and now we had a subdivision. * * * This is setting up exactly the same way. * * * So, help me feel better about why we would not require this to be a subdivision design?"

The planning administrator replied:

> "Well, that's a very good question and it's the very question that we ourselves * * * are tasked to look at and we concluded that * * * if we process this as a subdivision versus a partition would it have made a difference in the improvements we required and it wouldn't. * * * So, that was the main reason that we concluded that as long as we're getting

---

[4] Additionally, after the initial presentation by staff, petitioner, and the neighbor, a city councilor inquired, "Is this one of the things we can do is just deny this partition on the face of it? I mean, can we just say no partition here?" Legal counsel answered, "[I]f you vote to deny the partition then you'll be charging staff to come up with a basis for denial."

the same improvements, we didn't process it as a subdivision. Had we it would have been the same conditions of approval."

A few minutes later, in the part of the hearing reserved for the council's questions, Rogers asked, "Is there a different notice requirement for subdivisions than there is for a partition?" The planning administrator replied that the notice was the same, but that subdivision plan approvals required a neighborhood meeting on the proposal. Councilor Sullivan then asked, "[W]hat additional conditions would be, if any, imposed on this if this was brought back as a subdivision?" The administrator responded, "I'm not aware of any."

A motion was made to continue the hearing. Cannon indicated that he would be absent from that meeting and noted:

"I have difficulty when something is clearly a subdivision and it's not being filed as something other than a subdivision. So, ultimately, I'll make a motion to deny this and ship it back and let it go through the appropriate process where all the appropriate notices are given and we follow our code."

The continuance motion was voted down.

Petitioner was given three minutes to "make further comments on what you've heard tonight." Petitioner responded to the neighbor's concerns about geotechnical issues, testifying that the engineering report had been mailed to neighbors and reviewed by the city engineer. The public hearing then was closed, and the council adopted the motion to deny the application because "this is essentially a subdivision" and "the applicant has not followed our subdivision ordinance." The presiding officer then noted that "the staff would come back at a future time with documentation on our—how to—what to deny."

During the public hearing, then, SRC 63.065 was identified by Cannon as a purported approval criterion. Testimony was given by petitioner and the planning administrator on the relevance of that code provision. Petitioner opposed the application of subdivision standards. He stated that the

application was for a partition plan approval, so that the sub-division standards did not apply to the partition, and presented evidence of a recent partition with a large lot where subdivision standards and procedures were not used. The planning administrator said that he did not apply SRC 63.065 to the application and gave reasons why the provision should not be applied by the council. No witness before the council testified that SRC 63.065 was relevant and should be applied to deny the partition.

Based on this record, we conclude that the relevancy and scope of SRC 63.065 was "raised by * * * participant[s] before the local hearings body" under ORS 197.835(3) and was not a "new issue" under ORS 197.835(4). The statute does not define "participant," and the plain meaning of "participant" is "one that participates : one that takes part or shares in something with others." *Webster's Third New Int'l Dictionary* 1646 (unabridged ed 2002). "Participate" is commonly understood to mean "to take part in something (as an enterprise or activity) usu. in common with others." *Id.* Both petitioner and the planning administrator participated in discussion before the council on whether subdivision standards should be applied to the application. That is sufficient to "raise" the issue of the relevance and scope of SRC 63.065 under ORS 197.835(3). We need not decide whether the councilors who, during the public hearing, raised concerns about SRC 63.065 and offered examples of other relevant partitions were "participant[s]" within the meaning of ORS 197.835(3).

Our conclusion is confined to the facts of this case—where a code provision is raised during the public hearing by governing body members and discussed in general by staff members and the applicant, where the materiality of the provision is not the subject of focused testimony by a party opposed to the application, and where notice of the potential applicability of the provision is not provided prior to the public hearing.[5] In a different context, there may be more

---

[5] LUBA found that SRC 63.065 itself was not a standard or criterion for making the partition decision. The board held:

"Stated differently, all SRC 63.065 authorizes the city to do is to apply subdivision procedures and standards to the partition application. * * * [N]othing in SRC 63.065 or elsewhere cited to our attention purports to authorize the city to summarily deny a partition application based solely on a determination

particular obligations of an applicant to discharge the burden of proof or persuasion or requirements that a party respond to an opponent's contentions that affect the meaning of "issue" under ORS 197.835(3). *Cf.* ORS 197.763(5) (requiring a prehearing oral statement in quasi-judicial land use hearings that testimony and evidence must be directed to the announced substantive criteria for the decision "or other criteria in the plan or land use regulation which the person believes to apply to the decision").

■        In its second assignment of error, the city contends that the board erred in reversing, rather than remanding, the partition plan decision. ORS 197.835(5) to (14) describes the authority of LUBA and its standards of review in determining land use appeals. ORS 197.835(8), (9), and (10) are most relevant to review proceedings for local government decisions involving the application of land use regulations, as is the case here. Those subsections of ORS 197.835 provide:

"(8)   The board shall reverse or remand a decision involving the application of a plan or land use regulation provision if the decision is not in compliance with applicable provisions of the comprehensive plan or land use regulations.

"(9)   In addition to the review under subsections (1) to (8) of this section, the board shall reverse or remand the land use decision under review if the board finds:

"(a)   The local government or special district:

"(A)   Exceeded its jurisdiction;

"(B)   Failed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C)   Made a decision not supported by substantial evidence in the whole record;

"(D)   Improperly construed the applicable law; or

---

under SRC 63.065 that the application is subject to subdivision procedures and standards."

*Stewart*, 58 Or LUBA at 612. The city does not assign error to that determination. The parties do not discuss the application of ORS 92.046 in classifying SRC 63.065 as an approval standard.

"(E)   Made an unconstitutional decision; or

"(b)   The state agency made a decision that violated the goals.

"(10)(a)   The board shall reverse a local government decision and order the local government to grant approval of an application for development denied by the local government if the board finds:

"(A)   Based on the evidence in the record, that the local government decision is outside the range of discretion allowed the local government under its comprehensive plan and implementing ordinances; or

"(B)   That the local government's action was for the purpose of avoiding the requirements of ORS 215.427 or 227.178.

"(b)   If the board does reverse the decision and orders the local government to grant approval of the application, the board shall award attorney fees to the applicant and against the local government."

LUBA reversed the partition denial under ORS 197.835(10)(a), noting that "the present case is the first decision we have reversed under ORS 197.835(10)(a), and we are aware of no guiding precedent." *Stewart*, 58 Or LUBA at 622. The board reasoned that the "application for development denied by the local government" referred to in ORS 197.835(10)(a) is "the application as proposed at the time of the local government's denial, including any conditions of approval that the applicant has proposed and the local government has accepted," but not "conditions of approval that the applicant has objected to or attempted to appeal to the local government's final decision maker, such as Conditions 1-3, prior to the city's denial." *Id.* So framed, LUBA held that the tentative partition plan denial was "outside the range of discretion" allowed to the city council because the partition application met the applicable standards. LUBA determined:

"As explained above, petitioner appears to be correct that the application meets all applicable partition and subdivision requirements, or at least on appeal the city has not identified any applicable subdivision standards that would require any further review, and the city made no effort to

identify any such standards below. As noted, the planning administrator testified that no additional improvements or conditions would be required under the applicable subdivision standards. In our view, petitioner's arguments on this point squarely invoke the authority granted LUBA under ORS 197.835(10)(a)(A) * * *."

*Id.* at 619.

On review, the city does not challenge LUBA's construction of "application for development" in ORS 197.835(10)(a) as including the initial application together with any subsequently proposed conditions accepted by petitioner. That issue is not before us.[6] Moreover, the city does not dispute the board's conclusion that it did not identify any "applicable subdivision standards that would require any further review."[7] For purposes of the application of ORS 197.835, then, we assume that the conditioned application would fully comply with the relevant standards and that the city did not have a legal basis to deny that application.

The city contends that LUBA erred in reversing the denial order "because the City committed, at most, a procedural error, and remand was the appropriate remedy." The city notes that ORS 197.835(9)(a)(B) allows the board to reverse or remand a land use decision if the local government "[f]ailed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner." ORS 197.835(1) requires LUBA to "adopt rules defining the circumstances in which it will reverse rather than remand a land use decision or limited land use

---

[6] As noted, when the council initiates evidentiary review of an administrative land division decision under SRC 114.210(d), the council review supersedes any "filed or possible appeal of the decision below." In such a case, the decision appealed from is treated as "a recommendation to council only." SRC 114.200(e).

[7] ORS 197.835(11)(b) allowed the city the opportunity in the LUBA proceedings to identify alternative bases in the local government record for denial of the partition application. That statute provides:

"Whenever the findings are defective because of failure to recite adequate facts or legal conclusions or failure to adequately identify the standards or their relation to the facts, but the parties identify relevant evidence in the record which clearly supports the decision or a part of the decision, the board shall affirm the decision or the part of the decision supported by the record and remand the remainder to the local government, with direction indicating appropriate remedial action."

decision that is not affirmed." The city argues that one of those rules, OAR 661-010-0073, requires LUBA to remand a limited land use decision when "the local government committed a procedural error which prejudiced the substantial rights of the petitioner."[8]

In arguing that its error was procedural for purposes of a necessary remand remedy, the city asserts that the order was incomplete for not specifying the real reasons for denial under SRC 63.047(b)(3). That code provision requires a city decision-maker to "make affirmative findings" in approving a tentative partition plan that the "tentative plan complies with all applicable provisions of this Code." The city classifies that incomplete form of the decision as a procedural error requiring further process before the city council.

The denial decision under review, however, was not required to be justified by *affirmative* findings on code compliance. Instead, SRC 63.047(b)(4) required the decision-maker to "adopt written findings and conclusions in connection with the approval or denial of a tentative plan." ORS 197.195(4) further obligated the city to justify the denial of a limited land use application by a statement "that explains the criteria and standards considered relevant to the decision" and then "explains the justification for the decision" based on those standards. The city did so and justified the

___

[8] OAR 661-010-0073 provides, in part:

"(1) The Board shall reverse a limited land use decision when:

"(a) The governing body exceeded its jurisdiction;

"(b) The decision is unconstitutional; or

"(c) The decision violates a provision of applicable law and is prohibited as a matter of law.

"(2) The Board shall remand a limited land use decision for further proceedings when:

"(a) The findings are insufficient to support the decision, except as provided in ORS 197.835(11)(b);

"(b) The decision is not supported by substantial evidence in the record. The existence of evidence in the record supporting a different decision shall not be grounds for reversal or remand if there is evidence in the record to support the final decision;

"(c) The local government committed a procedural error which prejudiced the substantial rights of the petitioner(s); or

"(d) The decision improperly construes the applicable law, but is not prohibited as a matter of law."

denial decision by explaining that, "[p]ursuant to SRC 63.065, * * * this partition application should have been processed as a subdivision, in compliance with the City's subdivision regulations." The city's decision was not incomplete or uncertain of meaning, it was simply wrong.

That error was not procedural in nature, such as a failure to give petitioner adequate notice and opportunity to respond to the application of a newly announced and relevant standard for the decision. *See Nicholson v. Clatsop County,* 148 Or App 528, 534, 941 P2d 566 (1997) (remand required for opportunity to comment on relevant standard not included in hearing notice). Instead, the city's justification was substantively wrong because the code provision did not provide a basis for denying an already-processed partition request. That substantive error pertained to the merits of the decision, and not to the manner in which the limited land use decision was adjudicated. LUBA was not obliged to remand the partition order because of procedural error under ORS 197.835(9)(a)(B) or OAR 661-010-0073(2)(c).

To whatever extent the city argues that a remand for affirmative approval findings is always necessary when a denial decision is overturned by LUBA, that contention is inconsistent with the text of ORS 197.835(10)(a). That statute requires reversal, and precludes remand, of a denial decision when LUBA determines on the basis of the record that the local government lacks the discretion to deny the development application. That was the case here. Under the circumstances of this case and the issues framed by the parties, LUBA did not err in reversing the denial of petitioner's tentative partition plan application under ORS 197.835(10)(a).

Affirmed.