Argued and submitted December 19, 1994, affirmed January 18, 1995

# DEPARTMENT OF LAND CONSERVATION AND DEVELOPMENT,
*Respondent,*

*v.*

# CURRY COUNTY,
*Respondent,*

*and*

# RIVER'S END RANCH,
*Petitioner.*

(LUBA 94-075; CA A86379)

888 P2d 592

Jeff H. Bachrach argued the cause for petitioner. With him on the brief were G. Frank Hammond and O'Donnell, Ramis, Crew, Corrigan & Bachrach.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Department of Land Conservation and Development. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Curry County.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of LUBA's remand of Curry County's comprehensive plan designation and zone change, under which 233 acres of a 272-acre parcel owned by petitioner would be redesignated from Forest Grazing to Rural Residential. We affirm.

The 272-acre parcel was part of a 1075-acre tract belonging to petitioner. In May, 1992, the tract was partitioned. The larger part had been and continued to be put to agricultural use and, according to LUBA, petitioner "divided the subject parcel from the parent parcel on the basis that both would be managed as farm units."

LUBA concluded, *inter alia*, that the county erred in its findings that the property is not "agricultural land" as defined in OAR 660-33-020(1). That rule provides, as material:

"(a)   'Agricultural Land' as defined in Goal 3 includes:

"(A)   Lands classified by the U.S. Soil Conservation Service (SCS) as predominantly Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon;

"(B)   Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices; and

"(C)   Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands.

"(b)   Land in capability classes other than I-IV/I-VI that is adjacent to or intermingled with lands in capability classes I-IV/I-VI within a farm unit, shall be inventoried as agricultural lands even though this land may not be cropped or grazed[.]"[1]

LUBA first concluded that the county properly looked only to the 233 acres for which the redesignation was proposed in making its findings concerning predominant soil

---

[1] The property is in the western part of the state, and class I-IV soils are the relevant ones.

classifications under subsection (1)(a)(A) of the rule. However, LUBA held that the findings under the other three subsections had to be based on the characteristics of the entire 272-acre parcel *and* the adjacent parcel in common ownership from which the first parcel had been divided. LUBA concluded that the county's findings failed to satisfy OAR 660-33-020(1)(a)(B), (1)(a)(C), and (1)(b). Petitioner's assignments of error challenge only LUBA's conclusion regarding subsection (b).

LUBA stated:

"The subject 233 acres are intermingled with land in capability classes I-IV, even if only the entire subject 272 acre parcel is considered in the analysis. Specifically, while the record is somewhat conflicting on the point, there is no dispute that the 272 acre parcel is composed of either 14% (Record 250) or 22.6% (Record 113) class I-IV soils. Similarly, the subject property is adjacent to the applicant's working farm, which is composed of predominantly class I-IV soils. Further, in 1992 the subject 272 acre parcel was divided from the applicant's adjacent working farm on the basis that the 272 acre parcel is a discrete farm unit. Accordingly, the findings that the subject parcel is not 'adjacent to or intermingled with lands in capability classes I-IV * * * within a farm unit' under OAR 660-33-020(1)(b) are erroneous."

Initially, petitioner contends that there was insufficient evidence to support what petitioner treats as a finding by LUBA that the adjacent property consists *predominantly* of class I-IV soils. Respondent Department of Land Conservation and Development (DLCD) agrees that the evidence did not show a predominance of class I-IV soil, but argues that the point is legally inconsequential. According to DLCD, unlike OAR 660-33-020(1)(a)(A), the test for whether land is adjacent to or intermingled with lands of class I-IV soils within a farm unit under OAR 660-33-020(1)(b) does not depend on whether those soil classes are predominant.

Petitioner asks us to interpret the rule in the opposite way, and asserts that subsection (b) does not mean that land that is not itself of soil class I-IV must be treated as agricultural land if it is adjacent to or intermingled with *any* land in those classes. Rather, petitioner argues, "[w]hether property is adjacent to or intermingled with parcels in a farm

unit consisting *predominantly* of soil classes I-IV should be the determinative question." (Emphasis petitioner's.)

Petitioner explains, *inter alia*:

"OAR 660-33-020(1)(b) does not appear as part of the definition of agricultural land in Goal 3. This Court has held that the predecessor of OAR 660-33-020(1)(b), *former* OAR 660-05-010(1)(b), was appropriately included as part of the rule's definition of agricultural land because it was 'complementary to and consistent with [Goal 3] * * *.' *[Dept. of Land Conservation] v. Coos County*, 117 Or App 400, 404, 844 P2d 907 (1992), *rev. denied* 316 Or 527, 854 P2d 939 (1993). As such OAR 660-33-020(1)(b) must be interpreted consistently with the definition in Goal 3.

"Goal 3 provides that soils in classes I-IV will cause property to be agricultural land only when they predominate. Adopting LUBA's interpretation nullifies that rule by allowing the presence of *any* classes I-IV soils in a 'farm unit,' a term not used in Goal 3, to trigger that designation. Moreover, following LUBA's reasoning, property could contain *no* classes I-IV soils and be unnecessary to permit an adjacent farm practice, OAR 660-33-020(1)(a)(C), yet still be agricultural land based on the presence of a minimal amount of classes I-IV soil next door. Thus, LUBA's interpretation impermissibly nullifies the predominance test in Goal 3 and renders OAR 660-33-020(1)(a)(C) essentially superfluous. 'LCDC is not, however, free to amend the goals through interpretation.' *1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 400, 752 P2d 271 (1988).

"LUBA erred by not interpreting the rule consistent[ly] with Goal 3 and OAR 660-33-020(1)(a)(A) and (C). Whether property is adjacent to or intermingled with parcels in a farm unit consisting *predominantly* of soil classes I-IV should be the determinative question. That interpretation incorporates the predominance test, which is essential to Goal 3." (Footnote omitted; emphasis petitioner's.)

We conclude, however, that there is no inconsistency between Goal 3 and LUBA's interpretation of OAR 660-33-020(1)(b). That goal, like OAR 660-33-020(1)(a)(A), applies the predominance test in connection with whether the land under consideration itself has the requisite capabilities. OAR 660-33-020(1)(b) is concerned with the different question of whether the land under consideration is adjacent to or intermingled with other land having those capabilities.

Petitioner's proffered interpretation is at odds with the language of Goal 3 and the pertinent rules. Goal 3 and OAR 660-33-020(1)(a)(A) expressly use the word "predominantly," and OAR 660-33-020(1)(b) does not; as petitioner itself notes, albeit in support of a different point, a promulgating body's use of "different terms in related portions" of its enactments generally signifies that "different meanings likely were intended." *State v. Adams*, 315 Or 359, 365, 847 P2d 397 (1993).

If petitioner's point is that OAR 660-33-020(1)(b) *must* be read to include the predominance test in order to be consistent with Goal 3, we again disagree, because the questions under the relevant parts of the two provisions are not the same. The Goal 3 formulation relates to a particular criterion for determining whether particular land has high agricultural capabilities. The question is qualitative. Conversely, the question under OAR 660-33-020(1)(b) is locational, *i.e.*, whether land that is not of agricultural quality is interspersed with land that is. In adopting the rule, LCDC could have concluded — and apparently did — that the predominance test is irrelevant to the second question. To qualify as "agricultural land" under subsection (b), both the higher and lower quality lands must be part of a farm unit. An objective of subsection (b) appears to be to prevent piecemeal fragmentation of farm land and to make all land in the unit part of a contiguous whole. Thus, the rule's purpose is not to measure the quality of particular land in the unit, except to require that the unit contain some class I-IV soils. The fact that all of the land comprises a single operating farm unit makes the quality of particular parts of it a marginal factor in determining whether the unit is "agricultural," and a central consideration in identifying the rule's objective to be the preservation of the unit as a whole. We find no inconsistency between Goal 3 and OAR 660-33-020(1)(b) as LUBA interpreted it.

Petitioner also argues that "policy grounds do not support LUBA's decision." We do not understand LUBA's decision to have been based on policy. Like this court's, LUBA's task in this case was to interpret the rule, not to write it. LUBA's interpretation was not legally incorrect.

Affirmed.