Argued and submitted March 3, affirmed May 3, 2000

Bonnie W. RIGGS,
Jon H. Riggs, Colleen A. McLean-Bowen,
Robert C. Bowen, Gregory L. Bierman,
and Ann Walker Bierman,
*Respondents,*

*v.*

DOUGLAS COUNTY,
*Respondent,*
*and*
Carl BARRON,
*Petitioner.*
(LUBA No. 98-157; CA A109011)

1 P3d 1042

David B. Smith argued the cause and filed the brief for petitioner.

Corinne C. Sherton argued the cause for respondents Bonnie W. Riggs, Jon H. Riggs, Colleen A. McLean-Bowen, Robert C. Bowen, Gregory L. Bierman, and Ann Walker Bierman. With her on the brief was Johnson & Sherton, P.C.

Paul E. Meyer, County Counsel, waived appearance for respondent Douglas County.

Before Linder, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner[1] seeks review of LUBA's decision remanding Douglas County's approval of his application to change the plan designation and zoning of a 101-acre parcel from farm and forestry to rural residential. We affirm.

We quote the facts that are relevant to our discussion from LUBA's opinion:

"From 1950 through 1974, the subject property was part of a 337.5-acre sheep ranch known as the Busenbark Ranch. In 1974, the 337.5-acre tract was divided into three smaller parcels, and conveyed into separate ownership; however, the entire tract continued to be managed as a sheep ranch until 1996. In 1996, the owner of the subject property, who managed the entire ranch, discontinued ranching operations and sold the subject property to [petitioner.] The subject property was sold to [petitioner] as 'residential' land.

"In 1996, [petitioner] applied for a plan amendment and zone change based upon a 'reasons' exception to Statewide Planning Goals 3 (Agricultural Lands) and 4 (Forest Lands). In that application [petitioner] sought to establish that there was a demonstrated need for rural residential housing in the vicinity. The Douglas County Planning Commission (commission) approved [petitioner's] application; however, after opponents appealed that decision, [petitioner] requested an opportunity to revise his application to show that the property was not resource land which warranted an agricultural designation under Goal 3 or a forest land designation under Goal 4."

After a number of intervening procedural events occurred that play no part in our analysis, the county's planning commission and, later, its governing body approved the application as so amended. As part of its decision, the county concluded that petitioner's 101-acre parcel was not "agricultural land" within the meaning of OAR 660-033-0020(1). That rule provides, as material:

"(a) 'Agricultural land' as defined in Goal 3 includes:

---

[1] We refer to the appearing parties by their designations in this court.

"(A) Lands classified by the U.S. Soil Conservation Service (SCS) as predominantly Class I-IV soils in Western Oregon * * *;

"(B) Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required * * *; and

"(C) Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands.

"(b) Land in capability classes other than I-IV * * * that is adjacent to or intermingled with lands in capability classes I-IV * * * within a farm unit, shall be inventoried as agricultural lands even though this land may not be cropped or grazed[.]"

Both of petitioner's assignments of error to us present the question of whether LUBA erred in its rejection of the two alternative grounds on which the county based its conclusion that petitioner's parcel is not part of a "farm unit," within the meaning of paragraph (b) of the rule. Specifically, the issue is whether the parcel is part of a "farm unit" with the other parcels that comprised the Busenbark Ranch, on which joint operations were conducted until shortly before petitioner purchased his property.

It appears to be undisputed that petitioner's parcel contains no cognizable soils of agricultural quality, but that there are some soils of that quality on the other remnant parcels of the Busenbark Ranch. The county reasoned in its order that, because the parcel owned by petitioner and the parcels containing Class I-IV soils were not commonly owned at the time of petitioner's application, and notwithstanding that the three parcels continued to be used as a single sheep grazing operation until shortly before petitioner purchased his parcel, that parcel and the other two did not comprise a single farm unit at the relevant time. In other words, the county understood OAR 660-033-0020(1)(b) to apply only when the land that contains Class I-IV soils is in *current* "common ownership" with the land that does not, regardless

of *any* past history of common ownership or use for farm purposes.

The second basis for the county's conclusion was that the sheep grazing operation that had been conducted on the combined parcels was not a "farm use" within the meaning of ORS 215.203. Rather, the governing body reasoned, the operation had been a "livestock feed yard" and, as such, a non-farm "commercial activit[y] that [is] in conjunction with farm use," as the relevant terms are used in provisions of the county's land use ordinance. Consequently, according to the county, no farm use had been conducted on the parcels, and they therefore could not constitute a "farm unit."

Respondents appealed the county's decision to LUBA. In rejecting the first basis for the county's conclusion, LUBA explained:

"The term 'farm unit' is not defined in statute or the administrative rules. The Court of Appeals has stated that the analysis required by OAR 660-330-0020(1)(b) is one of location: 'whether land that is not of agricultural quality is interspersed with land that is.' *Dept. of Land Conservation v. Curry County*, 132 Or App [393, 398, 888 P2d 592 (1995)]. The court continued:

" 'To qualify as "agricultural land" under [OAR 660-333-0020(1)(b)], both the higher and lower quality lands must be part of a farm unit. An objective of subsection (b) appears to be to prevent piecemeal fragmentation of farm land and to make all land in the unit part of a contiguous whole. Thus, the rule's purpose is not to measure the quality of particular land in the unit, except to require that the unit contain some class I-IV soils. The fact that all of the land comprises a single operating farm unit makes the quality of particular parts of it a marginal factor in determining whether the unit is "agricultural," and a central consideration in identifying the rule's objective to be the preservation of the unit as a whole.' *Id.*

"The cases [petitioner] cites, and those relied on by the county, involved lands that were in common ownership at the time of application and thus are not dispositive of the question here. From those cases we conclude that common

ownership between a subject parcel and adjacent agricultural land is an indication that the parcel is a part of a 'farm unit'; however, common ownership is not determinative. OAR 660-033-0030(3) provides that 'Goal 3 attached no significance to the ownership of a lot or parcel when determining whether it is agricultural land.'

"We conclude that the fact that the subject property is not owned by the same person who owns adjacent farm parcels does not conclusively establish that the subject parcel is *not* part of a single farm unit. Lands in diverse ownership that are nonetheless jointly managed as a single operating farm unit may constitute a 'farm unit' for purposes of OAR 660-033-0020(1)(b)." (Emphasis in original; footnote and citation omitted.)

However, LUBA added, in footnote 3 to its opinion:

"It may be that under the facts of this case the county could conclude, the historical use of the subject property as part of the Busenbark Ranch notwithstanding, that the subject property is no longer part of a farm unit by virtue of the cessation of joint farm activity on the subject property in 1996. However, the county made no finding to that effect, and we express no opinion in that regard."

In his first assignment of error to us, petitioner challenges that holding by LUBA. Although LUBA's analysis focused on whether the property comprising the putative farm unit is in common *ownership*—as did the parties' arguments to LUBA and the county decision that was before LUBA for review—petitioner's argument here is somewhat different. He acknowledges in his brief that "ownership alone is not conclusive," but contends that land cannot be part of a "farm unit" under OAR 660-033-0020(1)(b) unless it is *currently* in common management or farm operations with land that contains soils of the specified capability. Petitioner argues further that LUBA was incorrect insofar as it indicated that the historical use of property as part of a farm unit can be relevant to whether it currently qualifies as such. Petitioner states:

"The text of the 'farm unit' provision supports an inquiry into the present status of the subject property—how it is being used now, not how it has been used between the

present and some undetermined time in the past. The relevant standard is stated in the present active tense. The question is: Is the property 'adjacent to or intermingled with lands * * * within a farm unit'? The standard does not ask: Has the subject property ever in the past been adjacent to lands in the same farm unit?"

Petitioner's parcel was not in common farm operations with the other remnant parcels of the Busenbark Ranch at the time that he filed his application or at any time since he purchased it in 1996. Petitioner concludes that, applying the law as he views it to the facts established by the evidence, the parcel was not part of a "farm unit" at the pertinent time.

 Respondents note that petitioner's present argument differs from the one he made below and is not responsive to the holding of LUBA that he challenges. However, respondents indicate that we should address petitioner's present argument nonetheless, in the interest of providing guidance to the county on remand. We agree. Respondents then explain their disagreement with the substance of petitioner's argument:

"Under the interpretation of 'farm unit' advocated by [petitioner], no matter how long a parcel of non-Class I-IV soils had been managed with adjacent lands as part of a farm unit, it could simply be sold to a developer, and once that developer had ceased joint farm management operations, the parcel would be free of the OAR 660-033-0020(1)(b) requirement to protect 'intermingled lands' that are part of a farm unit, and the developer could claim it was non-agricultural land. That is exactly what happened in this case.

"Respondents are not arguing that **any** history of joint management for farm use, no matter how far removed from the present, should be sufficient to make property part of a 'farm unit' under OAR 660-033-0020(1)(b). Rather, Respondents simply contend that historical joint management of properties for farm use is **relevant** to determining whether property is part of a 'farm unit.' " (Boldface in original.)

We note initially that we do not find it as clear as petitioner does that the relevant test in the rule is stated in the "present active tense." It is true that the rule describes the land to which it applies as land of subagricultural quality

that "*is* adjacent to or intermingled with [higher capability] lands * * * within a farm unit[.]" (Emphasis added.) However, what the rule describes in the present tense is the whereabouts of the land "within a farm unit." The rule does not define the relevant terms or spell out the time frame within which farm operations must have taken place on particular land in order for it to be regarded as (or as part of) a farm unit.

■ It may be that, in close cases, that absence of specificity in the rule would make the temporal scope of its intended application indiscernible. *See DLCD v. Jackson County*, 151 Or App 210, 948 P2d 731 (1997). However, at least at the extremes, the answers are discernible through interpretation. For example, a parcel would not be part of a "farm unit" simply because concurrent farm operations occurred on it and nearby land 50 years ago. Conversely, as respondents point out, in *Dept. of Land Conservation*, we identified the purpose of the rule "to be the preservation of the unit," 132 Or App at 398; it would be squarely contrary to that purpose to interpret the rule as contemplating that a parcel could cease being part of the unit simultaneously with and simply because of the discontinuation of farm operations on it or its ostensible sale for nonfarm purposes. This case is closer to the latter extreme than the former. LUBA was correct in holding that further proceedings are necessary at the county level to identify the relevant facts.

 LUBA also rejected the county's determination that the activities on the parent parcel had never been a farm use but, rather, were a nonfarm livestock feed yard, within the meaning of the applicable county ordinance provisions. LUBA explained:

> "The county's alternative basis for determining that the subject property is not a 'farm unit' as that term is used in OAR 660-033-0020(1)(b) is that the historical use of the property for sheep grazing was not a farm use as defined in ORS 215.203(2)(a). The county reasoned that the sheep operation constituted a 'livestock feed yard' because of evidence that, during the time the parcel was operated as a sheep ranch, there was insufficient forage for the number of animals confined, and supplemental forage had to be supplied to the sheep on a year-round basis. The county then

determined that a 'livestock feed yard' was a 'commercial use in conjunction with farming' as provided in ORS 215.283(2)(a), and therefore, by definition, a non-farm use.

"[Respondents] argue that the county's alternative finding is an attempt by the county to apply the deferential standard of review a local government receives under ORS 197.829(1) to an interpretation of provisions of state administrative law. We agree that the county's interpretation of the uses on intervenor's property, to the extent it constitutes a determination of whether property is being put to 'farm use' as defined by ORS 215.203(2)(a) within a 'farm unit' under OAR 660-033-0020(1)(b), is not subject to deference. Using the reasonableness standard as articulated in *McCoy v. Linn County*, 90 Or App 271, 752 P2d 323 (1988), we find that grazing approximately 200 head of sheep on a 337.5-acre parcel for over 40 years does not constitute 'commercial activities that are in conjunction with farm use,' a non-farm use under ORS 215.283(2)(a). ORS 215.203(2)(a) clearly includes the raising, feeding, management and sale of livestock within the definition of 'farm use.' "

Petitioner argues that LUBA erred by not deciding the issue on the basis of the county ordinance provisions rather than the statute, and by not applying the deferential standard of ORS 197.829 and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), to the county's interpretation of the local provisions.

ORS 197.829(1)(d) provides that a local interpretation of local legislation is reversible by LUBA only if, *inter alia*, the interpretation is "contrary to a statute, land use goal, or rule that the [local legislation] implements." However, petitioner relies on *Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 911 P2d 350, *rev den* 323 Or 136 (1996), for the proposition that that statute may not serve as a vehicle for a collateral attack on an acknowledged local plan or ordinance, when the ostensible challenge to the local interpretation amounts in substance to a contention that the underlying legislation does not comply with the statewide goals or rules that it has already been acknowledged as satisfying. Hence, according to petitioner, the county's understanding of the term "livestock feed yard" in its acknowledged ordinance is entitled to deference, it survives the

deferential review standard, and it therefore *ipso facto* reflects a "correct" understanding of the acknowledged ordinance provision that LUBA may not disturb consistently with *Friends of Neabeack Hill*.[2]

Assuming, without deciding, that petitioner's argument would be meritorious if its underlying premises were correct, its premises are not. As petitioner seems to implicitly acknowledge, we made clear in *Friends of Neabeack Hill* that local interpretations of local legislation are reversible if they are contrary to state *statutes*, and that the "collateral attack" limitation that we articulated in *Friends of Neabeack Hill* applies only to the review of local interpretations for asserted inconsistencies with the statewide planning *goals and rules*. *Id.* at 46 n 3.[3] Petitioner maintains, however, that the asserted inconsistency here *is* between the county's interpretation of its ordinance and a state rule, *i.e.*, OAR 660-033-0020(1)(b) in general and the term "farm unit" in particular. We disagree. The relevant question is whether the activity that was conducted on the property was a nonfarm use, as the county construed its ordinance to mean, or a "farm use" within the meaning of the statutory definition in ORS 215.203. We agree with LUBA that no principle of deferential review was applicable and that the county's conclusion that the activity was not a "farm use" was contrary to the statute.

Affirmed.

---

[2] Petitioner does not appear to contend that LUBA's holding is reversible if the deferential review standard does not apply. Be that as it may, we agree with the relevant particulars of LUBA's analysis.

[3] We emphasize that the scope of that limitation is a matter that does not require resolution here.