Argued and submitted February 10, affirmed May 12, 2010

Shelley WETHERELL,
Robin Wisdom, Gerald Wisdom,
and Rich Holcomb,
*Respondents,*

*v.*

DOUGLAS COUNTY,
*Respondent,*

*and*

GARDEN VALLEY ESTATES, LLC,
*Petitioner.*

Land Use Board of Appeals
2009094; A144101

230 P3d 976

Zack P. Mittge argued the cause for petitioner. With him on the brief was Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Barbee B. Lyon argued the cause for respondents Shelley Wetherell, Robin Wisdom, Gerald Wisdom, and Rich Holcomb. With him on the brief was Tonkon Torp LLP.

Harry B. Wilson, Assistant Attorney General, argued the cause *amicus curiae* for Department of Land Conservation and Development. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

No appearance for respondent Douglas County.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner Garden Valley Estates, LLC (Garden Valley) seeks judicial review of an order of the Land Use Board of Appeals (LUBA) in which LUBA reversed the county's plan amendment and zone change concerning a 259-acre parcel. On review, Garden Valley contends that, because the 590-acre ranch (of which the 259-acre parcel had been a part) could not be *profitably* grazed and, for that reason, was not a "farm unit," LUBA erred in determining that the parcel was agricultural land pursuant to OAR 660-033-0020(1)(b).[1] We review to determine whether LUBA's order was "unlawful in substance," ORS 197.850(9)(a), and affirm.

Because it provides context for LUBA's decision and the parties' contentions on review, before turning to the facts, we describe the specific statutory and regulatory provisions that inform the central legal issue in this case—that is, specifically, whether LUBA correctly determined that the 259-acre parcel is agricultural land under OAR 660-033-0020(1)(b) because it is "within a farm unit." To resolve that issue, however, we must address a more fundamental and subsidiary legal question: What is a "farm unit" for purposes of OAR 660-033-0020(1)(b)? The parties' competing contentions in that regard focus on whether a "farm unit" must be economically viable—that is, *profitably* used for farm-related purposes. Accordingly, with the legal issue properly framed, we turn to the statutory and regulatory scheme.

As context, "Oregon's statewide land use planning goals, adopted by the Land Conservation and Development Commission (LCDC), set out broad objectives for land use planning in Oregon." *Save Our Rural Oregon v. Energy Facility Siting*, 339 Or 353, 361, 121 P3d 1141 (2005). To implement the land use goals, the legislature has authorized LCDC to adopt rules, which "are valid only if they are consistent with both the applicable [land use] statutes and [the]

---

[1] OAR 660-033-0020(1)(b) provides:

"Land in capability classes other than I-IV/I-VI that is adjacent to or intermingled with lands in capability classes I-IV/I-VI *within a farm unit*, shall be inventoried as agricultural lands even though this land may not be cropped or grazed[.]"

(Emphasis added.)

goals." *Wetherell v. Douglas County*, 342 Or 666, 676, 160 P3d 614 (2007) (*Wetherell I*).

◼     This case concerns the agricultural lands goal—that is, Goal 3—which is designed to "facilitate the preservation of agricultural land, as directed by ORS 215.243."[2] *Wetherell I*, 342 Or at 676. As the Supreme Court noted in *Wetherell I*, the touchstone for determining whether property is "agricultural land" for purposes of Goal 3 is whether the land is *suitable* for farm use." 342 Or at 683 (internal quotation marks omitted; emphasis in original). Specifically, in *Wetherell I*, the Supreme Court invalidated an administrative rule that prohibited local governments from considering evidence of profitability when determining whether property is agricultural land under Goal 3. The court reasoned that, "[u]nder Goal 3, land must be preserved as agricultural land if it is suitable for 'farm use' as defined in ORS 215.203(2)(a), which means, in part, 'the current employment of land for the primary purpose of obtaining a *profit in money*' through specific farming-related endeavors." 342 Or at 677 (emphasis in original). Nonetheless, the court noted that profitability is not determinative of whether land is agricultural land. *Id.* at 683. Instead, the court reasoned that a factfinder *may* consider profitability "to the extent such consideration is consistent with the remainder of the definition of 'agricultural land' in Goal 3." *Id.* at 682.

Consistently with the definition of "agricultural land" in Goal 3, OAR 660-033-0020(1) defines "agricultural land." That definition provides:

"(a)     'Agricultural Land' as defined in Goal 3 includes:

"(A)     Lands classified by the U.S. Natural Resources Conservation Service (NRCS) as predominantly Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon;

---

[2] As pertinent here, ORS 215.243(2) states one of the legislature's policies:

"The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and *the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state* and for the assurance of adequate, healthful and nutritious food for the people of this state and nation."

(Emphasis added.)

"(B)    Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a),[3] taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices; and

"(C)    Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands.

"(b)    Land in capability classes other than I-IV/I-VI that is adjacent to or intermingled with lands in capability classes I-IV/I-VI within a *farm unit*, shall be inventoried as agricultural lands even though this land may not be cropped or grazed[.]"

(Emphasis added.)

As previously indicated, this case concerns the meaning of the term "farm unit" in OAR 660-033-0020(1)(b)—a provision also referred to as the "farm-unit rule." That rule is consistent with Goal 3. *See Dept. of Land Conservation v. Coos County*, 117 Or App 400, 404, 844 P2d 907 (1992), *rev den*, 316 Or 527 (1993) (upholding the validity of a substantively similar, antecedent version of OAR 660-033-0020(1)(b); reasoning that the rule "simply acknowledge[d] that *land within farm units is suitable for farm use* and is therefore within the definition of agricultural land in Goal 3" (internal quotation marks omitted; emphasis added)). Of significance in this case, the term "farm unit" is not defined for purposes of OAR 660-033-0020(1)(b).[4]

---

[3] As relevant here, ORS 215.203(2)(a) defines "farm use" to include

"the current employment of land *for the primary purpose of obtaining a profit in money* by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof."

(Emphasis added.)

[4] We note that Garden Valley invokes the definition of "farm unit" in ORS 215.278(2) as context for the meaning of the term in OAR 660-033-0020(1)(b). However, ORS 215.278 concerns accessory dwellings for farmworkers and the definition of "farm unit" is expressly limited to the use of the term in that statute. Further, the antecedent version of what is now OAR 660-033-0020(1)(b) was promulgated before the enactment of ORS 215.278(2); thus, the meaning of the term "farm unit" in the rule is not informed by a later enacted statutory definition.

In light of that statutory and regulatory framework, we turn to the material facts. Because Garden Valley is not challenging the facts stated in LUBA's order, we take the material facts from the order on review.

"The subject 259-acre parcel is designated Agriculture and zoned Exclusive Farm Use-Grazing (FG). The parcel was formerly part of a 590-acre livestock ranch. In 2005, the county approved a partition that created the subject parcel, along with two other farm parcels that lie to the north and east. Following partition each of the three parcels were managed separately, with the subject property used for seasonal grazing. The subject property is developed with a dwelling and barns, and includes two ponds. It has no water or irrigation rights."

(Internal quotation marks omitted.)

After its acquisition of the 259-acre parcel in 2006, Garden Valley contended that the property could not be used profitably for grazing and sought a determination from the county that the parcel was "non-resource land and for that reason not subject to [Goal 3]." As pertinent here, the county determined that the 259-acre parcel was not agricultural land under OAR 660-033-0020(1).

Some of the respondents in the present judicial review proceeding appealed the county's decision to LUBA. LUBA remanded the case on several grounds, including "for findings [under OAR 660-033-0020(1)(b),] addressing * * * whether the [259-acre] parcel remains part of a 'farm unit' along with the two other parcels that made up the original 590-acre ranch."

On remand, the county considered that issue:

"53.   The Commission finds that the compelling testimony by Mr. Spencer and Mr. Simonis together with the professional analysis performed by Mr. Caruana, demonstrate convincingly that the property comprising the former 590-acre ranch is not a farm unit containing the subject property.[5] While there is some

---

[5] Our understanding is that the testimony of Spencer and Simonis and the professional analysis of Caruana concerned the issue whether the 590-acre ranch was suitable for farm use and, in particular, whether such use would be profitable.

historic use of the property being managed in conjunction with the other properties to the north and east, the evidence clearly demonstrates that joint management of the 590-acre ranch for grazing and haying activities similar to its historic use is not possible. The evidence reflects that the 590-acre ranch is not suitable for farm use and has not been a single operating farm unit since at least 1995, despite repeated attempts to manage it for that purpose.

"54. Each rancher of the 590 acres, despite considerable advantages (including alternative irrigated pasture, trucking companies, significant economies of scale, relationships in cattle industry) has found that ranch with its poor soils, poor forage, and lack of water is not suitable for farm use. Expensive efforts have been made in coming to this conclusion including attempts at pasture improvement, water development, and other management activities. All have failed. Goal 3 is intended to preserve large units of agricultural land as agricultural land. It is not intended to preserve as agricultural land units that are not suitable for farm use, simply because they may have been at some time in the past. Since the former 590-acre unit is not a viable farm unit, the Commission finds that the property should not be classed as agricultural land.

"55. [Respondents] argue that the property must be considered as part of a farm unit because there is no physical impediment to its continued joint use. The Commission disagrees. The limitations on soil, water and forage within the 590-acre ranch constitute physical limitations which preclude joint farm use on that ranch. The fact that properties have been historically managed together does not make them part of a 'farm unit.' Physical impediments (while they may be considered) are not the only impediments to the viability of a former parcel as a 'farm unit.' The 590-acre ranch has not been suitable for farm use as a unit for at least 14 years. Given this lapse of time and the fact the former elements of the subject property would not be suitable for farm use if they were managed together today, the Commission finds that it is improper to consider the property as part of a 'farm

unit' comprising the former 590-acre ranch. Accordingly, the Commission finds that the property is not agricultural land under this standard."

Reduced to its fundamental core, the county determined that, because the 590-acre ranch cannot be used profitably for grazing, it is not suitable for "farm use" and, hence, is not a "farm unit." Accordingly, the county determined that the 259-acre parcel is not within a "farm unit" and cannot be inventoried as agricultural land under OAR 660-033-0020(1)(b). Ultimately, based on its determination that the 259-acre parcel is not agricultural land, the county approved amendments to the comprehensive plan and zoning maps that would allow the parcel to be divided into five-acre residential lots. Petitioners again appealed to LUBA.

In addressing Garden Valley's contention that a "farm unit" is a geographic unit that is profitably used for farm-related purposes, LUBA's analysis focused primarily on the text of OAR 660-033-0020(1)(b). Specifically, LUBA reasoned that the text does not "include any suggestion that the profitability of a 'farm unit' is a consideration under that prong of the agricultural land definition." In that regard, according to LUBA, OAR 660-033-0020(1)(b) is similar to OAR 660-033-0020(1)(a)(A) under which land in certain soil classes "is agricultural land * * *, regardless of whether or not it can be profitably farmed."

LUBA expressly declined to extend the Supreme Court's reasoning regarding profitability in *Wetherell I* to the application of OAR 660-033-0020(1)(b) in this case for two interrelated reasons. First, LUBA noted that "the inherent manipulability and unreliability of any profitability evaluation cautions against extending and relying on that type of evaluation in * * * determining whether the subject property is part of a 'farm unit' for purposes of OAR 660-033-0020(1)(b)." Second, LUBA asserted that, because OAR 660-033-0020(1)(a)(B) expressly refers to "[l]and * * * that is suitable for farm use as defined in ORS 215.203(2)(a)," extending the Supreme Court's reasoning in this case would make OAR 660-033-0020(1)(a)(B) and OAR 660-033-0020(1)(b) "largely indistinguishable." Ultimately, LUBA concluded that "whether or not a 'farm unit' has been or can be farmed

'profitably' is not a consideration" under OAR 660-033-0020(1)(b).

Accordingly, having concluded that profitability is not a consideration in the present case, LUBA returned to the relevant legal question for purposes of OAR 660-033-0020(1)(b)—that is, "whether the subject property is properly viewed as part of a 'farm unit,' despite the recent cessation of joint use." According to LUBA, in making that determination, the most important consideration is "whether there is some significant obstacle to resumed joint operation."

Applying that standard, LUBA reasoned that "[t]here can be no possible dispute that the former ranch was a 'farm unit' for purposes of OAR 660-033-0020(1)(b), with a long and recent history of use for a hay/grazing operation that included the [259-acre parcel]." Significantly, LUBA noted that "[t]he county does not identify any changes that have occurred with respect to soil, water or forage on the former 590-acre ranch since the ranch was partitioned that would preclude a resumed hay/grazing operation similar to that conducted on the ranch for many years." Thus, because nothing "fundamental has changed that would preclude a resumption of a farm operation using the elements of the former ranch," LUBA concluded that the 259-acre parcel was within a "farm unit" for purposes of OAR 660-033-0020(1)(b) and reversed the county's decision. Garden Valley seeks judicial review of LUBA's resulting order.

On review, the parties' positions squarely raise a single legal issue—that is, whether the term "farm unit" refers to a geographic unit of land that is *profitably* used for farm-related purposes. However, the parties' subsidiary arguments in support of their respective positions are not squarely joined.

Garden Valley contends that a proper analysis of OAR 660-033-0020(1)(b) begins by identifying the pertinent "farm unit" so as to determine whether the subject property is within it. As previously indicated, although not defined for purposes of OAR 660-033-0020(1)(b), Garden Valley contends that a "farm unit" is a geographic unit of land that is *profitably* used for farm-related purposes. In support of that

contention, Garden Valley explains its understanding of the contextual origins of that purported definition:

"Interpreting 'farm unit' to encompass geographic units of land that are themselves suitable for farm use is consistent with Goal 3, and the applicable statutes that form the basis for OAR 660-033-0020(1)(b). The purpose of Goal 3 is to preserve land for 'farm use.' Accordingly, the Goal defines agricultural lands in capability classes other than I through IV as being limited to those lands that are 'suitable for farm use' or necessary for farm practices on adjoining lands. *See also* OAR 660-033-0020(1)(a)(B) ('Land in other soil classes that is suitable for farm use'). Likewise, ORS 215.243(2) provided for the preservation of 'agricultural land . . . in large blocks' as being necessary to 'maintain the agricultural economy of the state.' The Oregon Supreme Court has stated that 'we do not believe that it was the intent of the legislature in enacting ORS 215.243(2) to require that tracts of marginal agricultural lands which cannot be farmed profitably must forever be "locked up." ' *Meeker v. Board of Commissioners*, 287 Or 665, 677-[78, 601 P2d 804] (1979). As 'farm use' contains some consideration of the ability of property to be used to 'obtain a profit in money,' it is an appropriate consideration in determining what 'blocks' of land will be considered agricultural land. * * * Therefore, for property to be a 'farm unit' under OAR 660-033-0020(1)(b), that unit must be suitable for farm use."[6]

In sum, Garden Valley contends that, because the term "farm unit" implicitly incorporates an examination of the economic viability of the farm operation, the county properly considered whether the 590-acre ranch could be profitably grazed in

---

[6] As further support for its contention that a "farm unit" is a geographic unit of land that is suitable for "farm use," Garden Valley refers to a Land Conservation and Development Commission document entitled "Common Questions About Goal #3" that was issued in 1977 and was intended to provide "statements of the general policy for the application of the statewide goals." Thereafter, in 1982, in its notice of proposed adoption of the rules governing agricultural land, the commission indicated that the proposed rules contain the policies as stated in that 1977 document.

As pertinent here, the 1977 document describes "agricultural land" in a manner that tracks the three prongs of definition of "agricultural land" in what is now OAR 660-033-0020(1)(a). It does not contain any description that appears to relate to the farm unit prong in OAR 660-033-0020(1)(b). Accordingly, the 1977 document provides no additional support for Garden Valley's contention that a "farm unit" is a geographic unit of land that is suitable for "farm use."

determining that it is not a "farm unit" and properly determined that the 259-acre parcel was not agricultural land "within" such a unit.

Conversely, respondents and *amicus curiae*, the Department of Land Conservation and Development (DLCD), contend that profitability is not a consideration in identifying a "farm unit" and reason that a proper understanding of OAR 660-033-0020(1)(b) requires an examination of that provision's purpose. Specifically, DLCD asserts:

> "The text [of OAR 660-033-0020(1)(b)] requires only three considerations: (1) that the subject parcel not be in soil classes I-IV/I-VI; (2) that the subject parcel be 'adjacent to or intermingled with' land that does contain soil classes I-IV/I-VI; and (3) that the subject parcel be within a 'farm unit.' Read plainly, subsection (b) defines agricultural land by its location with respect to neighboring land in certain soil classes, and its relationship with those lands as a 'farm unit.' No text in the rule explicitly or implicitly requires that the subject parcel or the adjacent or intermingled lands be evaluated for their suitability for farm use. In fact, the closing phrase, 'even though this land may not be cropped or grazed,' forecloses consideration of the suitability of the land to farm use."

In sum, DLCD contends that Garden Valley erroneously posits a definition of "farm unit" that was not intended for the rule by "graft[ing] a use test—one already provided in OAR 660-033-0020(1)(a)(B)—onto a rule designed to address a parcel's relationship to surrounding land."

■    Resolution of the parties' competing contentions requires that we interpret OAR 660-033-0020(1)(b). As we recently explained,

> "[i]n interpreting an administrative rule, our objective is to determine the intent of the body that promulgated the rule. *State v. Papineau*, 228 Or App 308, 311, 208 P3d 500, *rev den*, 346 Or 590 (2009). To make that determination, we examine the text of the rule, in context. *Id.*; *see Abu-Adas v. Employment Dept.*, 325 Or 480, 485, 940 P2d 1219 (1997) (in interpreting administrative rules, the court uses the same methodology as it does in interpreting statutes); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993); *ODOT v. City of Klamath*

*Falls*, 177 Or App 1, 8, 34 P3d 667 (2001). 'Context includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes.' *Abu-Adas*, 325 Or at 485."

*Willamette Oaks, LLC v. City of Eugene*, 232 Or App 29, 33-34, 220 P3d 445 (2009). Context also includes prior Supreme Court case law interpreting that provision. *See State v. McDonnell*, 343 Or 557, 563, 176 P3d 1236 (2007), *cert den*, ____ US ____ , 129 S Ct 235 (2008) ("In construing the text of those statutes, we also examine their context, including this court's prior case law."); *State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009) ("Prior construction of a statute by this court is always relevant to our analysis of the statute's text.").

As previously indicated, the term "farm unit" is not defined for purposes of OAR 660-033-0020(1)(b). Nor does subsection (1)(b) include any express language that supports Garden Valley's contention that a "farm unit" is a geographic unit of land that is *profitably* used for farm-related purposes. Given that lack of explicit textual guidance, we examine the content and contours of "farm unit" in light of our decisions in *Dept. of Land Conservation v. Curry County*, 132 Or App 393, 888 P2d 592 (1995), and *Riggs v. Douglas County*, 167 Or App 1, 1 P3d 1042 (2000), which address the function of OAR 660-033-0020(1)(b) in the context of the definition of "agricultural land" as a whole and explain the nature of a "farm unit."

We begin with *Curry County*. In that case, we reasoned that, under a substantively similar version of OAR 660-033-0020(1)(b), land is suitable for farm use consistently with Goal 3 because of its *location*. In that case, the petitioners contended that a "farm unit" must consist predominately of soils in classes I-IV in order for adjacent or intermingled property with soils of other classes to be within the farm unit. We disagreed, noting that the question under the farm-unit rule "is locational, *i.e.*, whether land that is not of agricultural quality is interspersed with land that is" and explained that

"[a]n objective of subsection (b) appears to be to prevent piecemeal fragmentation of farm land and to make all land

in the unit part of a contiguous whole. Thus, the rule's purpose is not to measure the quality of particular land in the unit, except to require that the unit contain some class I-IV soils. *The fact that all of the land comprises a single operating farm unit makes the quality of particular parts of it a marginal factor in determining whether the unit is 'agricultural,' and a central consideration in identifying the rule's objective to be the preservation of the unit as a whole."*

*Curry County*, 132 Or App at 398 (emphasis added). In sum, in *Curry County*, we concluded that, for purposes of the farm-unit rule, land within a unit is suitable for farm use not because of its particular quality but rather because of its location within and relationship to the contiguous whole.

*Riggs* built on the reasoning in *Curry County*. There, in addressing circumstances that are similar to those in this case, we described the principle to be used in determining when a parcel ceases to be within a "farm unit." In doing so, we provided useful guidance as to the meaning of that term.

The subject property at issue in *Riggs* was a 101-acre parcel, which,

"[f]rom 1950 through 1974, * * * was part of a 337.5-acre sheep ranch known as the Busenbark Ranch. In 1974, the 337.5-acre tract was divided into three smaller parcels, and conveyed into separate ownership; however, the entire tract continued to be managed as a sheep ranch until 1996. In 1996, the owner of the subject property, who managed the entire ranch, discontinued ranching operations and sold the subject property to [petitioner.] The subject property was sold to [petitioner] as 'residential' land."

167 Or App at 3 (internal quotation marks omitted; brackets in original). Thereafter, the petitioner sought a plan amendment and a zone change because the subject property was not agricultural land under Goal 3. *Id.*

The issue in *Riggs* was "whether the [101-acre] parcel is part of a 'farm unit' with the other parcels that comprised the Busenbark Ranch, on which joint operations were conducted until shortly before petitioner purchased his property." 167 Or App at 4. The petitioner contended that "land cannot be part of a 'farm unit' under OAR 660-033-0020(1)(b)

unless it is *currently* in common management or farm operations with land that contains soils of the specified capability." *Riggs*, 167 Or App at 6 (emphasis in original). The respondents disagreed, asserting that, under the petitioner's definition of "farm unit,"

> " 'no matter how long a parcel of non-Class I-IV soils had been managed with adjacent lands as part of a farm unit, it could simply be sold to a developer, and once that developer had ceased joint farm management operations, the parcel would be free of the OAR 660-033-0020(1)(b) requirement to protect 'intermingled lands' that are part of a farm unit, and the developer could claim it was non-agricultural land.' "

167 Or App at 7.

In rejecting the petitioner's contention, we reasoned that OAR 660-033-0020(1)(b) "does not define the relevant terms or spell out the time frame within which farm operations must have taken place on particular land in order for it to be regarded as (or as part of) a farm unit." 167 Or App at 8. Specifically, we explained:

> "[A] parcel would not be part of a 'farm unit' simply because concurrent farm operations occurred on it and nearby land 50 years ago. Conversely, as respondents point out, in [*Curry County*], we identified the purpose of the rule 'to be the preservation of the unit,' 132 Or App at 398; it would be squarely contrary to that purpose to interpret the rule as contemplating that a parcel could cease being part of the unit simultaneously with and simply because of the discontinuation of farm operations on it or its ostensible sale for nonfarm purposes. This case is closer to the latter extreme than the former."

*Riggs*, 167 Or App at 8.

Although we did not establish a bright-line definition of "farm unit," our holding in *Riggs* is predicated on an understanding that, whatever else the term "farm unit" may mean, it includes lands, whether in common or diverse ownership, on which there is a recent history of concurrent farm operations. Further, we implicitly reiterated that lands within that unit are "suitable" for farm use because of their location—that is, their relationship to the unit. Taken to its

logical extension, our reasoning in *Riggs* establishes that, when farm operations have recently ceased on a parcel that historically has been used for farming operations with other lands as part of a single "farm unit," the parcel is within the unit unless the applicant can demonstrate circumstances— the most important of which is whether there is a significant obstacle to resumed joint operation—that dictate a contrary result. Our understanding of the term "farm unit" and description of the principle to be used in determining when a parcel ceases to be within a "farm unit" promotes the policy that OAR 660-033-0020(1)(b) furthers—that is, to preserve and protect large blocks of land for agricultural use. *See Curry County*, 132 Or App at 398 (explaining the purpose of the rule); *Coos County*, 117 Or App at 404 (same).

■       Based on our decisions in *Curry County* and *Riggs*, and after examining OAR 660-033-0020(1)(b) in light of those decisions and the context of the definition of "agricultural land" as a whole, we conclude that profitability is not a consideration in determining whether the 590-acre ranch in this case is a "farm unit." Having so concluded, the remaining issue in this case reduces to whether the 259-acre parcel is "within" the 590-acre "farm unit." In resolving that issue, LUBA applied the test based on our reasoning in *Riggs*—that is, "whether the subject property is properly viewed as part of a 'farm unit,' despite the recent cessation of joint use."

We agree with LUBA's application of that test to the circumstances of this case. As LUBA stated, "[t]here can be no possible dispute that the former ranch was a 'farm unit' for purposes of OAR 660-033-0020(1)(b), with a long and a recent history of use for a hay/grazing operation that included the subject property." Specifically, LUBA noted that, where "[t]he county does not identify any changes that have occurred with respect to soil, water or forage on the former 590-acre ranch since the ranch was partitioned that would preclude a resumed hay/grazing operation similar to that conducted on the ranch for many years," the county had not identified that "something fundamental has changed that would preclude a resumption of a farm operation using the elements of the former ranch." Accordingly, as LUBA concluded, based on the proper understanding of the legal

principles underlying OAR 660-033-0020(1)(b), the 259-acre parcel is agricultural land under OAR 660-033-0020(1)(b) because it is "within a farm unit."

Affirmed.